ROBERT C. THOMSON, Plaintiff in Error, *v.* THE PEOPLE, Defendants in Error.

ERROR TO STEPHENSON.

A juror is qualified, although he has conversed with a witness, and believed what he heard, if he had not formed an opinion as to the guilt or innocence of the accused.

An indictment for obtaining money or property, under false pretenses, should allege who was the owner of the property.

THIS was an indictment for obtaining property under false pretenses. The bill was found in the Stephenson Circuit Court, and is in the words and figures following, to wit:

The grand jurors, chosen, selected and sworn in and for the said county of Stephenson, in the name and by the authority of the People of the State of Illinois, upon their oaths, present: That one Robert C. Thomson, late of said county, on the twenty-second day of January, in the year of our Lord one thousand eight hundred and fifty-nine, in the said county of Stephenson, knowingly and designedly devising and intending by unlawful ways and means to obtain and get into his hands and possession the choses in action, money, goods, wares and effects, and other valuable things of the good people of this State, and with intent to cheat and defraud one Levi Lucas, late of said county, the said Levi Lucas then and there being of unsound mind and memory, did then and there unlawfully, knowingly and designedly, falsely pretend and represent to the said Levi Lucas, he, the said Robert C. Thomson, then and there knowing that the

said Levi Lucas was of unsound mind and memory, that he, the said Robert C. Thomson, was then and there a person of knowledge, ability and skill in the art and science of surgery, and eye and ear doctoring business, and eclectic medical science and practice; and that he, the said Robert C. Thomson, was then and there well able and qualified to teach and impart the art and science of surgery, and eye and ear doctoring business, and eclectic medical science and practice, to the said Levi Lucas; and that he, the said Levi Lucas, was then and there able and competent to learn and acquire the art and science of surgery, and eye and ear doctoring business, and eclectic medical science and practice; and that he, the said Robert C. Thomson, was then and there engaged in the practice of surgery, and eye and ear doctoring business, and eclectic medical practice, and was then and there doing therein a large and remunerative business, the avails of which business then and there amounted to from twenty to thirty dollars per day; and that he, the said Robert C. Thomson, then and there intended to take, and would take the said Levi Lucas into copartnership with him, the said Robert C. Thomson, in the art and practice of surgery, and eye and ear doctoring business, and eclectic medical practice; and that he, the said Robert C. Thomson, then and there intended to teach, and would teach the said Levi Lucas the art and science of surgery, and eye and ear doctoring business, and eclectic medical science and practice. And the said Levi Lucas then and there believing the said false pretenses and representations, so made as aforesaid by the said Robert C. Thomson, and being of unsound mind and memory, and he, the said Robert C. Thomson, then and there well knowing that the said Levi Lucas was then and there of unsound mind and memory, and he, the said Levi Lucas, then and there relying upon said false pretenses and representations, and being deceived thereby, was then and there induced, by reason of and by means of the said false pretenses and representations, so made as aforesaid, to deliver, and did then and there deliver to the said Robert C. Thomson, a certain deed from one Jacob Mohr to the said Robert C. Thomson, and the lands therein described, of the value of eighteen hundred dollars, said deed being of the following described real estate, to wit: being part of lot number four, in block number forty-nine, in the original town (now city) of Freeport, in said county, according to a plat of said city now on record in the office of the clerk of the Circuit Court of said county; and the said land being more particularly described in a certain deed made by one Jacob Mohr to the said Robert C. Thomson, and bearing date the nineteenth day of January, in the year of our Lord one thousand eight hundred and fifty-nine, and recorded in the office of

the clerk of the Circuit Court of said county of Stephenson, in book twenty-seven of deeds, on page three hundred and eighteen. And also, by reason of and by means of said false pretenses and representations, and then and there relying upon the said false pretenses and representations, the said Levi Lucas did then and there deliver to one Jacob Mohr, at the request of the said Robert C. Thomson, and for his sole use and benefit, as payment for the land described in the said deed above mentioned, two promissory notes, made by the said Levi Lucas to the said Jacob Mohr; one of said notes of the value of eight hundred dollars, being for the sum of eight hundred dollars, payable in one year from the date thereof, and ten per cent. interest; and the other of said notes of the value of one thousand dollars, being for the sum of one thousand dollars, payable to the order of the said Jacob Mohr, two years after the date thereof, and ten per cent. interest; and both of said notes bearing date the nineteenth day of January, in the year of our Lord one thousand eight hundred and fifty-nine. And the said Robert C. Thomson did then and there, on the said twenty-second day of January, in the year of our Lord one thousand eight hundred and fifty-nine, at the said county of Stephenson, well knowing that the said pretenses and representations were false, unlawfully, knowingly and designed-ly, by means of said false pretenses and representations, obtain the said deed, and the said notes of the said Levi Lucas, and with intent then and there to cheat and defraud the said Levi Lucas of the same. Whereas, in truth and in fact, the said Robert C. Thomson was not then and there a person of knowl-edge, ability and skill in the art and science of surgery, and eye and ear doctoring business, and eclectic medical science and practice; and whereas, in truth and in fact, the said Robert C. Thomson was not then and there well able and qualified to teach and impart the art and science of surgery, and eye and ear doc-toring business, and eclectic medical science and practice, to the said Levi Lucas; and whereas, in truth and in fact, the said Levi Lucas was not then and there able and competent to learn and acquire the art and science of surgery, and eye and ear doc-toring business, and eclectic medical science and practice; and whereas, in truth and in fact, the said Robert C. Thomson was not then and there engaged in the practice of surgery, and eye and ear doctoring business, and eclectic medical practice, and was not then and there doing therein a large and remunerative business, the avails of which business then and there amounted to from twenty to thirty dollars per day; and whereas, in truth and in fact, the said Robert C. Thomson did not then and there intend to take, and would not take the said Levi Lucas into co-partnership with him, the said Robert C. Thomson, in the art

and practice of surgery, and eye and ear doctoring business, and eclectic medical practice; and whereas, in truth and in fact, the said Robert C. Thomson did not then and there intend to teach, and would not teach the said Levi Lucas the art and science of surgery, and eye and ear doctoring business, and eclectic medical science and practice. And so the jurors aforesaid, upon their oaths aforesaid, do say' that the said Robert C. Thomson, by means of the false pretenses and representations aforesaid, on the said twenty-second day of January, in the year of our Lord one thousand eight hundred and fifty-nine, in the said county, unlawfully, knowingly, and designedly, by means of said false representations and pretenses, did obtain from the said Levi Lucas, the said deed, lands and notes, in the manner and form aforesaid, with intent then and there to cheat and defraud the said Levi Lucas of the same; against the form of the statute in such case made and provided, and against the peace and dignity of the same people of the State of Illinois.

There was a second count in the indictment not materially variant from the foregoing.

Motion to quash the indictment was overruled.

And afterward, at December term, 1859, of said court, SHELDON, Judge, presiding, said cause came on for trial, and one Hiram C. Best was called as a juror in said cause, and being examined under oath, touching his qualifications as a juror, said: "I conversed with a witness in this case," and "formed an opinion as far as I heard." "I believed what I heard." "I have not formed an opinion as to the guilt or innocence of the prisoner." "I formed an opinion as far as I heard." Whereupon said juror was challenged by the defendant for cause, but the court decided that the juror was competent, and refused to allow the defendant's challenge, to which ruling of the court, the defendant excepted.

The jury found the defendant guilty, and thereupon the defendant moved the court for a new trial, and in arrest of judgment, for the following reasons, to wit:

1. Because the verdict is contrary to the evidence.

2. Because the verdict fails to do substantial justice between the parties.

3. Because there is a variance between the proof offered in evidence and the charges in the indictment.

4. Because there was no sufficient evidence that Levi Lucas was of unsound mind at the time of making the contract.

5. The court erred in admitting proof of the unsoundness of mind of Levi Lucas seventeen years previous to the time of trial.

6. The court erred in admitting any testimony of the unsound-

ness of mind of Levi Lucas at any other time than at the time of making the contract and agreements with defendant.

7. The court erred in admitting the record of the deed from Jacob Mohr to defendant, without any proof that the deed was in defendant's possession, and without sufficient and legal notice having been served on defendant to produce the deed.

8. Because the court allowed plaintiff to introduce parol testimony to vary and contradict the written contract between Lucas, the prosecuting witness, and the defendant.

9. The court erred in not confining the plaintiffs in their proofs to the written contract between prosecuting witness, Levi Lucas, and defendant, or to conversations between Lucas and defendant, subsequent to the date of said contract in relation to the same.

10. The court erred in permitting the witness, Cordelia Lucas, wife of Levi Lucas, the prosecuting witness, to testify on the trial of this cause, and her name does not appear on the back of the indictment.

11. Because the proof shows a deed of Jacob Mohr to defendant, and not from Levi Lucas, or that Levi Lucas was the owner of the property.

12. Because the evidence shows that there was no criminal intent in the contract between prosecuting witness and defendant.

13. The court erred in not allowing defendant's challenge of juror, Hiram C. Best, for cause.

And in arrest of judgment; the indictment should have been quashed, and judgment should be arrested, because—

1. Indictment does not aver and charge that Thomson knew that prosecuting witness was of unsound mind, and incapable and disqualified to learn the art and science of surgery, and eclectic medicine, and eye and ear doctoring, at the time of making the contract.

2. Because the indictment does not show fraudulent intent on the part of the defendant, and it does not appear from the indictment that the transaction was any fraud upon Levi Lucas.

3. The indictment shows upon its face a contract between the parties, on which a complete remedy can be had in a civil suit.

4. The indictment does not show whose property the notes, deed and real estate were, and does not show them to be the property of Levi Lucas.

5. The indictment shows a promise on the part of defendant to do an act in future, and no false pretense will be presumed until the time for the performance of the act has expired, and an indictment will not, in such case, be sustained.

6. The indictment shows that the prosecuting witness, Levi Lucas, has an adequate remedy in a civil action, if any fraud was practiced, and the indictment for false pretenses cannot be sustained.

7. The indictment does not charge that defendant knew that Lucas was incompetent to learn the art and science of surgery, and eye and ear doctoring, and eclectic medical science and practice.

8. The indictment avers that the choses in action, money, goods, wares and effects, and other valuable things, were the property of the People of the State of Illinois, and does not aver that they were the property of Levi Lucas at the time of obtaining the same.

9. And because the indictment is in other respects informal, uncertain, insufficient and indefinite.

Which motions were overruled by the court.

And the court thereupon rendered judgment, and imposed a fine of five hundred dollars upon said defendant, and sentenced him to six months imprisonment, and to pay the costs, and to stand committed until said fine and costs were paid.

The following errors are assigned on the record:

1. The court erred in overruling defendant's motion to quash the indictment.

2. In refusing to sustain the defendant's challenge for cause, of the juror, Hiram C. Best.

3. In permitting illegal testimony to be given to the jury.

4. In excluding from the jury legal testimony offered by the defendant.

5. In overruling defendant's motion for a new trial.

6. In overruling defendant's motion for arrest of judgment.

TURNER & INGALLS, for Plaintiff in Error.

A. D. MEACHAM, for The People.

BREESE, J. As the record in this case does not purport to contain all the evidence given on the trial, we are left to decide alone upon the sufficiency of the indictment.

Before considering the indictment, a preliminary objection, growing out of the rejection of Hiram C. Best, as a juror, will be disposed of. When examined touching his qualifications, he said he had conversed with a witness in the case, and formed an opinion as far as he heard—that he believed what he heard, but that he had not formed an opinion as to the guilt or innocence of the prisoner—that he had formed an opinion as far as he had heard.

It is not disclosed who the witness was, or on what branch of the case he talked. The juror might have formed an opinion of that matter of which he spoke with the witness, but did not, as he declares, form any opinion of the guilt or innocence of the prisoner. He was clearly a competent juror.

The indictment contains two counts substantially alike, in both of which alleging that the defendant, " intending by unlawful means to get into his possession the choses in action, money, goods, wares and effects, and other valuable things of the people of this State," etc., without any allegation it was the property of the person sought to be defrauded, which we hold essential in cases of this character. That person must be alleged to be the owner of the property out of which he was defrauded.

In the case of *Sill* v. *The Queen,* 16 Eng. L. & E. 375, the indictment alleged that R. Sill, late of, etc., unlawfully, knowingly and designedly, did falsely pretend to one H. Broome, that, (here setting out the pretenses,) by means of which said false pretenses, the said R. Sill did then and there unlawfully obtain from the said H. Broome, two bills of exchange of the value and for the payment of £120, respectively, and one bill of exchange of the value and for the payment of £240, with intent then and there to cheat and defraud him, the said Broome, of the same ; whereas, in truth and in fact, etc., (negativing the truth of the pretenses alleged.)

On conviction, the judgment was reversed in Queen's Bench, on the ground of the omission to state the ownership of the property. This is necessary to exclude the fact of the defendant having obtained his own goods or money, or of their being derelict, in which case there would be no offense in getting possession of them.

Nor does the indictment allege in either count, that defendant knew the prosecuting witness was incapable of learning the art he contracted to teach him.

The evidence, as far as it appears on the record, tends rather to show a breach of contract than a criminal act—a private rather than a public wrong; but as all the evidence is not before us, we cannot say what is behind.

We think the indictment so defective that no judgment can be pronounced on the verdict, and we accordingly reverse the judgment.

*Judgment reversed.*