### J. M. MATHIS ET AL. v. F. R. PRIDHAM, RECEIVER.

#### No. 34.

1. **Amendment not a New Cause of Action.**—When a receiver sues all the stockholders of an insolvent corporation to recover of them the par value of stock purchased by them below par, for the benefit of creditors of the corporation, and alleges that he sues as receiver by virtue of the order of the court, sets up the total amount of the debts established against the corporation and the insolvency of the corporation, and the total amount to be realized in order to liquidate the debts, an amendment enlarging these allegations and setting up the date and amount of each debt which has been established against the corporation, with the name of each creditor, is not a new cause of action.

2. **Venue in Suit by Receiver Against Stockholders.**—Suit being instituted in Victoria County against the stockholders living there and those living elsewhere, if the others not living in that county were necessary parties to the suit they were properly sued there. In its general structure and purpose this is an equitable proceeding in behalf of all the creditors of an insolvent corporation (after the appropriation of all of its tangible assets to the debts) against subscribers to its capital stock, to have an accounting and a contribution from the defendants of such proportion of their unpaid subscriptions as may be found necessary to satisfy the debts. It is essential to the completeness of the remedy that the amount of the indebtedness of the corporation, the amount due by each stockholder, and the proportion thereof necessary to discharge the debts, should be ascertained. Therefore, the other stockholders were necessary parties, and the venue was properly laid in Victoria County.

3. **Solvency of Stockholders a Necessary Issue.**—It is also necessary to ascertain who among the subscribers are solvent and who are insolvent, that the solvent ones may be required, as far as their subscriptions suffice, to contribute enough to make up the deficiencies arising from the insolvency of the others.

4. **All Stockholders Necessary Parties.**—In order to render certain and uniform justice to each creditor and each stockholder, they should all, as far as practicable, be brought into court. The suit should be for the benefit of all the creditors, and against all solvent delinquent subscribers who are within the jurisdiction of the court.

**5. Same—One Suit Against all, Proper.**—It should be within the power of creditors of an insolvent corporation, or their representatives pursuing the trust fund, to bring all parties necessary to a full adjustment of their rights before the same court in one suit. The principles and practice of equity afford such a remedy, which in nowise conflicts with our statutes, but is embraced within the scope of the fourth exception of article 1198, Revised Statutes.

**6. Joinder of Parties.**—The right of a creditor to sue an individual stockholder to recover an unpaid subscription and apply it upon his debt does not involve an accounting and marshalling of assets and distribution of all the proceeds. The authorities are in conflict as to his right to do so, but none of them deny the right of all the creditors to join all solvent delinquent stockholders within the jurisdiction of the court in one proceeding.

**7. Misjoinder of Parties and Causes of Action.**—A suit by a receiver in behalf of all the creditors of an insolvent corporation, against all delinquent stockholders upon their contracts of subscription, setting up the amount of unpaid indebtedness and the amount due on each stock subscription, and praying for judgment against each defendant for such an amount as may be necessary to pay off the indebtedness of the insolvent corporation, is not a misjoinder of parties or causes of action, although the subscriptions to stock were made at different times and places, and the conditions attached to the subscriptions were not the same, and although the defenses urged by the various stockholders were different.

**8. Receiver May Sue in His Own Name.**—The corporation was estopped by the agreement sued on from bringing this suit, and the order of the court and the law (Revised Statutes, article 1468) both authorizing suits by the receiver, he might sue in his own name, although neither the statute nor the order of court in express terms so directed. The law now in force expressly authorizes the receiver to sue in his own name. Sayles' Civil Statutes, article 1464.

**9. Stock Issued in Excess of Price Paid not Void.**—Some of the defendants by their contracts were to receive $2 in stock for $1 paid, and others were to receive $85 of stock for every $60 paid. Article 12, section 6, of the Constitution, did not render the stock issued in excess of the price to be paid void. The first clause of this provision prohibits the issuance of stock unless it has been paid for; the second renders void all fictitious increase of stock or indebtedness. No fictitious increase of stock is alleged, but that the original stock was sold for less than par to defendants in violation of the rights of creditors. Stock issued and sold for a valid consideration is not fictitious within the provision quoted, nor void because sold for less than its par value.

**10. Stockholders Liable to Creditors for Par Value.**—Article 12, section 6, of the Constitution, does not change the rule long established by courts of equity, that stockholders of a corporation are liable to creditors for the par value of the capital stock subscribed for and held by them.

**11. Creditors' Claims—Sufficient Consideration.**—It was not necessary for the plaintiff to set out the cause of action of the creditors against the corporation with the same particularity as would be required in an original suit by the creditor against the corporation to establish it. The claims had all been established by the court in the receivership proceedings, and allegation of that fact conclusively showed the liability of the corporation for them.

**12. Performance of Conditions.**—Fort Worth stockholders subscribed to the stock upon the condition that the company should erect and operate as soon as possible, in or in the immediate vicinity of Fort Worth, a slaughter house of certain stated capacity. The petition alleged that the slaughter house was erected, equipped, and operated, and this was sufficient allegation of per-

formance of this condition. The fact that the company was compelled by financial embarrassments to suspend business did not release stockholders from their obligation to creditors.

**13. Same—Increase of Directors.**—A further section provided, that immediately after the acceptance of the subscription by the company the charter should be so amended as to provide for thirteen directors, of whom six should be elected from the Fort Worth stockholders. It was not necessary to amend the charter in order to increase the number of the directors. Revised Statutes, article 575. That was done, and the object of that provision of the contract attained.

**14. Construction of Contract.**—Section 3 of the contract of stock subscription made with the Fort Worth stockholders provides, that they should not be entitled to any issue of stock until they had responded to each call to the amount of their respective subscriptions, and that if they should fail to pay any installment all previous payments should be forfeited: provided. however, that when their certificates of stock were issued their rights, duties, obligations, and privileges should relate back to the time of the acceptance of the offer. This contract gave the subscribers no right of election to forfeit their payments and recede from the agreement, or to refuse to pay for the whole stock which they bound themselves to take; and they were bound for the stock they subscribed for, whether all of the remainder was ever taken or not.

**15. Same—Necessary Allegation and Proof.**—The Fort Worth stockholders did not unconditionally agree to pay the amounts subscribed for stock at the prices specified. but that they would pay those amounts in case half the cost of building, etc., should be equal to the amount subscribed. If one-half of such cost should be less than the amount subscribed. then they agreed to pay only such part of the latter amount as would be equal to half the cost. Therefore, there should have been allegation and proof of the cost of building and equipping the slaughter house at Fort Worth.

**16. Exceptions to Petition and Answer.**—When the same points are presented in the exceptions to the petition as are raised by the exceptions to the answer, if defendant's exceptions to the petition are overruled the exceptions to the answer are properly sustained.

**17. Setoff to Suits for Stock Subscriptions.**—Several of the defendants having pleaded in setoff debts which they alleged the corporation owed them for money advanced to it by them while operating its business, *held*, that plaintiff's exceptions to this plea were properly sustained. This is not a suit by one creditor against an individual stockholder. but a suit in equity against all. There is a recognized distinction between the two classes of cases.

**18. Procurement of Subscription by Fraudulent Representations.**—Fort Worth stockholders allege that they were induced to subscribe to the capital stock by representations of the company that it would furnish half the money necessary to purchase, locate, and equip the Fort Worth slaughter house, which statements were untrue, and made to deceive, and did deceive. *Held*, of no avail in this proceeding as a defense against creditors.

**19. Purchasers of Stock Below Par, Liability of.**—Although the Fort Worth stockholders bought from the residue of the stock and paid all they agreed to pay, they purchased below par value, and thus appropriated a part of the capital stock which was the trust fund for the payment of creditors, and it bound them to make good to the creditors the face value of the stock when it became necessary to pay debts.

**20. Disposition of Unpaid Stock.**—Article 505, Revised Statutes, authorizing directors to dispose of the residue of capital stock as the by-laws may

direct. does not authorize the directors to release subscribers to stock from their obligation to creditors for par value thereof; nor does the statute put creditors upon such inquiry as would affect them with notice of subscriptions to or sales of stock at a discount.

**21. Limitation.**—Plea of the statute of limitations was properly stricken out. No cause of action against the subscribers ever accrued to the creditors until they had exhausted their remedy against the corporation and had all of its property applied to their claims.

**22. Hearsay Evidence.**—The secretary of the Victoria house received from the secretary of the Fort Worth house a statement showing names of Fort Worth subscribers, amount subscribed, amount paid, number of certificates, number of shares, and value. This paper *held* to be hearsay, and erroneously admitted in evidence.

**23. When Shareholders Become Liable.**—It is not necessary that shares of stock should have been actually issued and delivered to any of the subscribers to create a liability. Their subscription fixes their liability. Therefore it was error for the court below to hold that the Fort Worth defendants could be treated as shareholders only from the time they made payment, and that they could be charged with the par value of their stock only when they had made payment on their subscriptions.

**24. Notice to Creditors of Sales Below Par.**—When creditors had notice when their debts were created of the arrangement between the corporation and the subscribers to its capital stock, by which they received it for less than par, they can not hold the subscribers for a greater sum than they agreed to pay.

**25. What is Notice.**—Notice to individuals who are presidents of banks which subsequently became creditors of the insolvent corporation is not sufficient to charge the banks with notice, in the absence of evidence that they acted for the banks in extending the credit to the corporation at such time and under such circumstances as to authorize the inference that the knowledge formerly acquired was still present before their minds.

**26. Same.**—Parties can not be required to store away in their minds all facts which they learn, so as to be able to call them up at any time in the future to affect other transactions than that in which the knowledge was acquired. Such information has not the characteristics of notice in law, unless the transaction affected thereby took place under such circumstances as would lead to the reasonable conclusion that the fact reported was still remembered.

**27. Distribution of Proceeds.**—Where subscribers have not paid all they agreed to pay for their stock, that, when recovered. should constitute a fund for all the creditors, whether with or without notice, for as to that fund creditors without notice have no priority over others.

Appeal from Victoria. Tried below before Hon. H. Clay Pleasants. The opinion states the case.

*Glass, Callender & Proctor*, for appellants J. M. Mathis, T. P. McCampbell et al., Victoria stockholders.—*Venue.* 1. The court erred in overruling the exception of each of these defendants to the jurisdiction of the court over him, because it appears by plaintiff's petition that none of these defendants resided in Victoria County, and the petition showed no grounds authorizing suit to be instituted against them in Victoria county.

2. As to the defendants Ed. Power and Wm. Albrecht, whose subscriptions were $500 each, and Ralph Welder, whose subscription was $250, the court had no jurisdiction of the subject matter of the suit (Const., art. 5, sec. 16), and this objection could not be waived nor cured by consent. Rev. Stats., art. 1198; Lindheim v. Muschamp, 72 Texas, 33; Holloway v. Blum, 60 Texas, 625; Cohen v. Munson, 59 Texas, 236.

3. The court erred in overruling the first special exception in the several answers and amended answers of these defendants excepting to the plaintiff's petition, because the receiver sues in his own name and it does not appear that he had authority to bring this suit in his own name. High on Rec., sec. 209.

*Misjoinder.* 1. The court erred in overruling the second special exception in said answers excepting to plaintiff's petition, because the suit is brought against all the defendants, and no joint obligation or joint liability of the defendant is set out or alleged; but, on the contrary, said petition alleges a separate demand against each defendant.

There are in all about seventy individuals and ten or twelve firms made defendants, and in each case the allegation is that the individual or the firm owes so much as a balance due and unpaid upon stock issued to the individual or to the firm for less than par value.

2. The right of each defendant to be sued alone upon a separate demand is something more than a mere technical right. It is a material right, and the denial of it in this case works a hardship. For example, here are judgments against Ed. Power and William Albrecht for $400 each. They may be, and we believe they are, not only erroneous but absolutely void for want of jurisdiction in the court over the subject matter. But the claims against these defendants are so joined and complicated with the claims against seventy or eighty other defendants, and the record is so encumbered and swollen by the proceedings in regard to all the defendants, that neither of them could have the judgment against him revised by the Supreme Court without incurring an expense for the transcript alone greater than the amount of the judgment against him. Rev. Stats., arts. 604, 608; Bank v. Sachtleben, 67 Texas, 421; Jones v. Bank, 10 Col., 464.

3. The court erred in overruling the fourth special exception of said answers, excepting in substance to plaintiff's petition because it sought to recover from each defendant for the value of stock alleged to be issued to him in excess of the stock for which the money subscribed by him would pay at par value, which was excepted to on the ground that such excess of stock if issued was illegal and void, and conferred no rights and imposed no liabilities. Const. 1876, art. 12, sec. 6; Scovil v. Thayer, 105 U. S., 143.

4. The plaintiff's petition showed no cause of action against the de-

fendants, because it contained no averment of the real value of the stock issued or sold to them, nor that it was of any greater value than the price defendants paid for it.  Fogg v. Blair, 139 U. S., 118.

5.  Whatever might be the right of creditors of the corporation or of the receiver, if he sued as representative of creditors and properly alleged causes of action in their behalf, the corporation itself is estopped, and the receiver, suing as the representative of the corporation, is also estopped, to claim anything from the stockholders for stock which was issued at an agreed price less than par, and which agreed price has been fully paid.  Cook on Stock and Stockh., sec. 38b; Id., sec. 208; Scovil v. Thayer, 105 U. S., 153, 154; Billings v. Robertson, 28 Hun, 122.

6.  A receiver invested with general authority to collect all funds out of which the creditors of a corporation are entitled to be paid, is always entitled to recover assets which belong to the corporation; but in order to recover funds which the corporation itself could not recover he must show that he represents creditors who have an equitable right to be paid out of these funds.  Mora. on Corp., sec. 868, par. 3; High on Rec., sec. 201.

7.  The allowance by the receiver and auditor in the case of Ayres & Cannon et al. v. The Texas Continental Meat Company, of the claims of creditors against said company presented in said suit, and the approval of said claims made by the court in said suit, could not bind the stockholders to pay said claims out of funds which were not assets of said company, and which the company itself could not recover from these defendants.  High on Rec., sec. 315, and note 1; Cook on Stock and Stockh., sec. 42, and note 3.

8.  When the receiver of a corporation sues its stockholders to compel them to pay creditors out of funds which the corporation could not recover, he must show what creditors he represents and the nature of their claims, and that they have an equitable right to be paid out of such funds; and it follows that the stockholders have the right to contest such claims.  High on Rec., sec. 201; Mora. on Corp., sec. 868.

*Notice.*  1.  The court erred in holding that notice to A. Baldwin, president of the New Orleans National Bank, was not notice to said bank, because the knowledge which constituted the notice was not acquired while he was engaged in transacting the business of the bank.

Knowledge in the mind of the president of the bank that the stock of the meat company had been issued for less than par was notice of that fact to the board of directors over which he presided when they discounted the paper of that company or otherwise extended credit to it, because it was the duty of the president to communicate that knowledge to the board, and the law presumes he did communicate it; and the fact that he acquired his knowledge while transacting his private business does not change his duty or the effect of his knowledge upon the bank.

There is abundant authority that notice to the cashier of a bank is notice

to the bank, and on this point we refer the court to the note in 36 American Decisions, page 198, where many cases are cited.    But all the authorities, we believe, on this subject lead to the principles declared by the Supreme Court of Louisiana in Factor's Company v. Marine Dry Dock Company, 31 Louisiana Annual, 149, "A corporation can not see or know anything except by the eyes or intelligence of its officers," and that "Wherever knowledge in any form will suffice, a corporation must be held to know what its president and chief officers know."    Distilled Spirits Case, 11 Wall., 356, 366, 368; Factor's Co. v. Dock Co., 31 La. Ann., 149; Bank v. Canal Co., 4 Paige, 127; Smith v. Bank, 32 Vt., 341; Tagg v. Bank, 9 Heisk., 479; Bank v. Campbell, 4 Humph., 396; Bank v. Cushman, 121 Mass., 490; Green v. Ins. Co., 10 Pick., 402; Mora. on Corp., secs. 540b, 540c; Pars. on Part., 196, 197; 5 Wait's Act. and Def., 451; Willis v. Green, 5 Hill, 232; Bank v. Root, 4 Cow., 126.

2.  The court erred in the first conclusion of law, "That the contract between the corporation and the persons signing the instrument of writing set out in the petition herein, and bearing date the 14th day of August, 1883, was an executory contract, and that when the shares of stock contracted for, or any number of these shares, were paid for in accordance with the terms of the contract, such signer of said instrument became eo instante a stockholder, whether certificates of stock were issued to him or not, and that such of the signers of said paper who failed to pay for any stock within the time prescribed by the instrument were never shareholders and can not be held liable for the debts of the corporation under any circumstances."

The court erred in the fifth conclusion of law in holding that the statutes of Texas authorizing the directors of a corporation to sell the stock of the company in accordance with its by-laws, does not put creditors of the corporation on inquiry as to whether the stock has been taken at less than its par value; and erred in holding that the charter of a corporation fixes the value of its stock.    Rev. Stats., arts. 581, 585; Mora. on Corp., secs. 591, 592.

*Setoff.*    The court erred in sustaining exceptions to the several pleas of setoff made by certain of these defendants.    Morton v. Gordon, Dall., 396; Lang v. Dougherty, 74 Texas, 226, 232; Eborn v. Cannon, 32 Texas, 231, 249; Mora. on Corp., sec. 787, last par.; Garrison v. Howe, 17 N. Y., 458; Mathey v. Neidig, 72 N. Y., 100; Agate v. Sands, 73 N. Y., 620; 14 Am. and Eng. Ency. Law, 295, 296, 301, 302.

*Scott & Levi*, also for appellants.

*Hunter & Stewart; Hunter, Stewart & Dunklin; Hogsett & Green; Hogsett, Green & Humphreys*, for appellants S. G. Jennings, J. P. Smith et al., Fort Worth stockholders.

*Jurisdiction.* 1. The court erred in overruling the defendant's exception to the jurisdiction of the court over the persons of these defendants, because plaintiff's petition showed that said defendants resided at the institution of this suit in Tarrant County, Texas, and said petition shows no grounds for jurisdiction over said defendants in Victoria County. Masterson v. Cundiff, 58 Texas, 472; Parker v. Foster, 3 Ct. App. C. C., sec. 305; Thomp. on Lia. of Stockh., sec. 114; Mora. on Corp., 1 ed., sec. 269.

2. That the corporation is being wound up by a legal representative would not change the rights of the signers to the contract or give the court winding up the same jurisdiction over the persons of said signers. Holloway v. Blum, 60 Texas, 629; Cohen v. Munson, 59 Texas, 236; Roan v. Raymond, 15 Texas, 85.

*Fraudulent Representations.* 1. If one is induced to subscribe to the capital stock of any corporation by false and fraudulent representations made to him by the promoters of such corporation, such subscriber can avoid his liability by establishing that he was induced so to do. This rule applies even to original subscribers of stock. But where the corporation is already formed and organized, and seeks to dispose of the residue of its capital stock, and in order to induce men to purchase same its officers and agents sent out by it to sell said stock make false and fraudulent representations concerning the profitableness of its business and financial condition, tending to establish a high value of said stock, and thereby induce men to purchase the same or to enter into a contract for the purchase of the same, such purchaser may avoid his liability and refuse to pay for said stock or accept the same by establishing that he was so induced to enter into said contract. And this rule would apply as well in defense of the action brought by the receiver of said corporation as if brought by the corporation itself. Cook on Stockh., secs. 140, 147, 148, 150, 152, 350, note 5.

2. A stockholder can make same defense at suit of receiver as he could make at suit of corporation. High on Rec., sec. 205, note 1; Cook on Stockh., sec. 208; 1 West. Rep., 161; 33 Barb., 610; 23 N. J. L., 283.

3. The court erred in sustaining the plaintiff's special exception to defendants' answer, setting up full payment of the amount of money by him agreed to be paid for shares of capital stock in the Texas Continental Meat Company, because the facts therein pleaded as to said payment are in law and in equity a complete and proper defense to plaintiff's cause of action to the payment of the number of dollars agreed to be paid to extinguish its obligation. Rev. Stats., art. 585; Stein v. Howard, 6 Am. and Eng. Corp. Cases, 514; Const., sec. 6, art. 12; Mora. on Corp., secs. 61 (note 5), 69, 110, 118, 225, 226.

Shares are personal property. Rev. Stats., art. 590.

The right of the corporation to sell its stock at less than par can not be questioned by subsequent creditors. Graham v. Railway, 102 U. S., 148.

*Notice.* The court erred in that conclusion of fact wherein he finds that Baldwin & Co. and such of the stockholders of the corporation as were creditors were the only creditors who had notice at the time they extended credit to said company that the stock of the corporation had been issued to shareholders for less than its par value.

Notice to the president or cashier of a national bank is notice to the bank. Notice to one member of a firm or copartnership is notice to the firm; and any information on the subject upon which notice is predicated that would put an ordinarily prudent person upon injury, which if followed up would lead to the knowledge of the facts, would be notice in law. Rev. Stats., art. 585; Morse on Banks, 125, 127, 129–131; Wade on Law of Notice, secs. 675, 687, 689; Wait on Insolv. Corp., sec. 496.

*Liability.* 1. The court erred in his conclusion of law wherein he holds that every stockholder of a company who received its stock at a price less than its par value as fixed by the charter is in equity liable to the extent of the difference between the price paid for the stock and its par value, for any debt incurred by the corporation subsequent to the purchase of the stock, unless the creditor at the time of extending credit to the corporation had such knowledge of such sales of the stock of the company as would charge the creditors with the express or implied assent to such sale; because the law is well settled that the corporation, after organization, if all of its capital stock has not been subscribed for, may by an order of its board of directors dispose of the residue of its stock in such manner and at such price, terms, and conditions as its board of directors may deem proper. Rev. Stats., art. 585; 1 Mora. on Corp., secs. 61, 110, 118, 225, 286–292; 2 Mora. on Corp., secs. 829, 830, 831, note 1; Paper Co. v. Waples, 3 Wood, 34; Wait on Insolv. Corp., secs. 87, 102; Handley v. Stutz, 139 U. S., 417; Clark v. Bever, 139 U. S., 96; Fogg v. Blair, 139 U. S., 118; 6 Am. and Eng. Corp. Cases, 514; 82 N. Y., 535; 59 Md., 1.

2. Neither the District Court of Victoria County nor any other court has power by its orders, upon the motion of creditors or anybody else, either in law or equity, to change the rights, liabilities, and obligations of a party to any contract so as to make the liability joint when the parties have made it several, or take from any resident of this State the right and privilege of being sued in the county of his residence; and the conclusion of the court affirming such a doctrine is error. High on Rec., sec. 205, note 1; Cook on Stockh., sec. 208; 1 West. Rep., 161; 33 Barb., 610; 23 N. J. L., 283.

*Henry J. Labatt,* for appellant H. Kempner, adopts briefs of other appellants and makes the following additional point:

The court erred in rendering judgment against this defendant for the amount of said judgment, because it appears from the evidence this de-

fendant purchased the stock standing in his name in open market from others, and did not subscribe for the same to the corporation, but paid its then full market value.    Mora. on Corp., secs. 834, 836.

*Proctor & Proctor*, for appellee, F. R. Pridham, receiver.—*Venue.*    1. This suit is such an ancillary proceeding as is contemplated by article 595, Revised Statutes, and as such was properly instituted in the District Court of Victoria County against all appellants.    But whether it be precisely the ancillary statutory proceeding or not, it is an ancillary equitable remedy, plainly concurrent with any statutory one and in no sense excluded thereby. 2 Mora. on Corp., 866, 867, 896; 55 Am. Dec., 77, note; Cook on Stockh., 204; Wait on Insolv. Corp., 156; Smith v. Huckabee, 53 Ala., 196.

2. It was the court's duty in the original suit to direct the receiver of this insolvent corporation to make ratable assessment upon the stockholders for the amount of unpaid capital stock necessary to pay creditors. The court had already jurisdiction over the matter of this call.    The present suit is only the receiver's assessment of the stockholders.    2 Mora. Corp., 822.

3. Even if this be considered a proceeding independent entirely of said original suit, yet, nevertheless, in a suit of this nature all the stockholders should be made parties, and ordinarily the corporation also. Without the presence of all the stockholders a complete adjustment of all the rights and liabilities of the stockholders is impossible.    The corporation in this particular suit was not a necessary party, for said indebtedness to creditors had been previously established by another adjudication. 2 Mora. Corp., 822; Cook on Stockh., 206b; Pome. Rem., 486–490; Calv. on Parties, 10, 11.

4. The grand principle which underlies the doctrine of equity in respect to parties is, that every judicial controversy should if possible be ended in one litigation, so that the decree in the single suit should determine all rights, interests, and claims, should ascertain and define all conflicting relations, and should forever settle all questions pertaining to the subject matter.    Pome. Rem., 247; 1 Pome. Eq. Jur., 141; Bank v. Investment Co., 74 Texas, 433; Clegg v. Varnell, 18 Texas, 294.

The point at issue is one of common interest to all parties to the suit; and even granting that the interests of the several defendants were otherwise unconnected, yet they should be joined.    Pome. Rem., 527–532; Calv. on Parties, 5–11.

5. If the object of the suit is single, but it happens that different persons have separate interests arising out of the single object, it necessarily happens that all such different persons must be brought before the court in order that the suit may conclude the whole matter.    Salvidge v. Hyde, 5 Madd. Ch., 138; Boyd v. Hart, 5 Paige, 38; 5 Dan. Ch. Pl., 386; 1 Story Eq. Pl., 531, 532.

*Limitation.* Certain objections of limitation of two and four years are urged against said indebtedness ab initio, and also against the enforcement of said indebtedness in the present proceeding. Certainly all this indebtedness, having been fixed by decree of court as against the corporation, is res-adjudicata as to the shareholders. If any of said claims were barred when approved in original suit, and the corporation failed to make proper defense, it was said shareholders' province to have done so in said original suit. But now these claims are safe from collateral attack. Cook on Stockh., 209; 2 Mora. on Corp., 886. Now as to the statute of limitation as against the enforcement of these valid demands upon this unpaid subscription fund: In the first place, we question whether the statute can be invoked by appellants, for the reason that this right to have capital stock paid up is a " continuing subsisting trust and confidence to which the statute has no application.'' Payne v. Bullard, 23 Miss., 88. Granting, however, that it has place in a proceeding of this nature, yet it certainly could begin to run only from time of the receiver's demand, i. e., the inauguration of this suit (Cook on Stockholders, 195), since which time there have been pending legal proceedings to collect same.

*Stock Value.* 1. The charter of a corporation fixes the value of its stock so far as creditors are concerned. The capital stock as fixed by the charter is the trust fund for creditors. This is the distinctively American rule. Bank v. Investment Co., 74 Texas, 437; 2 Mora. on Corp., 780, 781, 826; Cook on Stockh., 42f, 46b; 1 Laws. Rights and Rem., 495; Wait on Insolv. Corp., 142–146; Scovill v. Thayer, 105 U. S., 143; Sawyer v. Upton, 91 U. S., 56; Chubb v. Upton, 95 U. S., 666; Pullman v. Upton, 96 U. S., 328; Hawley v. Upton, 102 U. S., 314; Sawyer v. Hoag, 17 Wall., 610–620; Flinn v. Bayley, 7 Fed. Rep., 785; Fogg v. Blair, 25 Am. Law Rev.; Ins. Co. v. Mfg. Co., 97 Ill., 537; Northrop v. Bushnell, 38 Conn., 498; Fisher v. Seligman, 7 Mo., 383; Sagory v. Dubois, 3 Sand. Ch., 466–499; Kehler v. Ladman, 11 Mo. App., 550.

2. It is only where a creditor give scredit to a corporation knowing that its capital stock.had not been fully paid up, but had been declared paid up for the purpose of releasing shareholders from further liability to creditors, that such creditor has no equity to insist upon said capital stock being fully paid up in its face value. Simple knowledge on the part of a creditor that corporate shares have been issued for less than their par value in no sense affects any right of said creditor. Knowledge that the purpose of the corporation in such issuance is to release shareholders from further liability to creditors is the keystone of the rule. 2 Mora. on Corp., 829.

There is a clear distinction between knowledge acquired by an agent and notice given the agent with specific design of notifying the principal. Only the former, if anything, is present in this case. 2 Mora. on Corp., 540b; Bisph. Prin. Eq., 325.

The general rule on this subject of knowledge on the part of the agent being constructive notice to the principal is, that the information constituting the notice must be obtained by or imparted to the agent while he is actually engaged in transacting business for his principal.

It is further an element of this general rule that the knowledge must come in the course of the same transaction from which the principal's rights and liabilities arise, which it is claimed depend upon or are modified by the constructive notice.

Upon this general rule there has been placed by a strong line of authorities an important and well settled limitation, namely: Where the transaction in question closely follows and is intimately connected with a prior transaction in which the agent was also engaged, and in which he acquired material information, or where it is clear from the evidence that the information obtained by the agent in a former transaction was so precise and definite that it is or must be present to his mind and memory while engaged in the second transaction, then the requisite as to notice in the same transaction becomes inapplicable, and the information acquired by the agent operates as constructive notice to the principal in the second transaction, although the principal was a stranger to prior business.

But this limitation must be qualified as follows: If the agent acquired the information while acting for his principal and in the very same transaction, then it is conclusively presumed that he retains said information present in his mind and memory during the entire conduct of said transaction, and the principal is charged with constructive notice. But if the agent acquired the information in a former and independent transaction, then it is prima facie presumed that he does not retain same in his mind and memory in the subsequent transaction on behalf of a principal, and prima facie there is no notice to said principal. This presumption may be overcome by evidence, but the proof must be clear. 2 Pome. Eq., 670, 671, 672, and cases cited; Constant v. Univ. Rochester, 111 N. Y., 604; Distilled Spirits, 11 Wall., 356; Fuller v. Bennett, 2 Hare, 394.

Taking up the question of knowledge on the part of the agent constituting constructive notice to the principal, we submit that the weight of text book authority is with the absolute proposition that the knowledge must come to the agent while acting for the principal. 2 Mora. Corp., 540b; 1 Am. and Eng. Ency. Law, 419; Taylor on Corp., 210; Ang. & Ames on Corp., 305; Bisph. Prin. Eq., 387; Pars. on Part., 196, 197; Sovy v. State, 41 N. J. L., 394.

Where the knowledge comes to the agent, not only while not acting for his principal, but actually while acting in his own private interests, the presumption is yet stronger that same is not retained in his mind and memory while acting in a subsequent transaction for his principal. Brass Co. v. Glass Co., 37 Mo. App., 145; Savings Assn. v. Printing Co., 25 Mo. App., 642; McCormick v. Wheeler, 36 Ill., 114; 2 Pome. Eq., 117.

*Setoff.*   It is a general rule that a holder of claims against an insolvent corporation can not set them off against his liability for an assessment on his stock in the corporation to pay creditors.   Scoville v. Thayer, 105 U. S., 143, 152; Sawyer v. Hoag, 17 Wall., 610, 622; 2 Mora. on Corp., 861, 862; Cook on Stockh., 193; Tayl. on Corp., 129, 811; Wait on Insolv. Corp., 548.

*D. C. & L. L. Labatt,* for appellee.—1.   The suit is ancillary and an inevitable sequel to and part of the proceedings in 1928 of Ayres & Cannon v. The Corporation, essential to the proper administration of justice and equity, and in no sense an original or independent action.

2.   The defendants, as stockholders, were already parties in court when the receiver was appointed, or when the judgment of Ayres & Cannon was rendered.   They were beneficiaries in a joint venture, duly incorporated and having one interest, although their pecuniary liability was several.   93 U. S., 228; 113 U. S., 309; 20 Wallace, 524; 5 Ia., 500; 49 Me., 527; 39 Me., 35; 20 John, 669; 6 Metc., 546; 101 Mass., 385; 108 Mass., 523; 15 Fed. Rep., 363; 4 Ia., 13; 43 Pa. St., 424; Pollard v. Bailey, 20 Wall., 524; 91 U. S., 45, 65; 15 Am. Law Rep., N. S., 638; 84 Ill., 575; 112 Ill., 208; 13 Wis., 57; 16 Mass., 9; 15 Mass., 505; 3 Mason, 308; 16 Conn., 593; 9 Paige, 152; 22 How., 380; Knox v. Ogilvie, 22 How., 380; 106 U. S., 519; Jones v. Davenport, 45 N. J. Eq., 32.

3.   " Where the shareholders are simply made individually liable for the corporate indebtedness to an amount equal either to the par value of the shares held by them respectively or to the proportion which their shares bear to the total amount of the capital stock, the rule applied in. many cases is that all the shareholders as far as practicable should be joined in an action in equity, which should be brought by all the creditors or in such a form that all the creditors may come in."   14 Wis., 700; 82 Ind., 457; 73 N. C., 323; 30 Minn., 173; 10 S. C., 263; 102 Ill., 350; 53 Ala., 191; 34 Ark., 323; 20 Wall., 520; 101 U. S., 216; 102 Ill., 350; 10 Metc., 525–569; 99 U. S., 25; 3 Mason, 308–314; 3 Sandf. Ch., 467; 16 Conn., 593, 3 N. Y., 415–423; 13 Wis., 63; 105 U. S., 143; 106 U. S., 519; 17 Wall., 610; 91 U. S., 46; Jackson v. Traer, 52 Am. Rep., 449; 24 Wend., 479; 2 Mora. Corp., secs. 902, 806; 101 U. S., 205.

4.   There is no question but that a court of equity, having acquired jurisdiction of a corporation for the benefit of creditors, may make assessments upon stockholders for unpaid balances due the company in payment of stock.   Upton v. Trebilcock, 91 U. S., 45; Webster v. Upton, 91 U. S., 65; Sanger v. Upton, 91 U. S., 56; 24 How., 112; Mining Co. v. Woodbury, 14 Cal., 265.

5.   " Though the defendants each owe several amounts, it is not nec-

essary that a separate action should be instituted against each to recover what he may be owing." Thompson v. Meisser, 108 Ill.

6. A fraudulent representation to the rights and duties resulting from membership does not give the subscriber a right to avoid his contract; 36 Miss., 572–588; 10 Ind., 187–190; 12 La., 638; 1 Mora. on Corp., sec. 96; 2 Id., sec. 839; 75 Mo., 26; Oakley v. Turgand, 2 H. L. R., 325, and authorities p. 840; Field on Corp., 363; 2 Mora. on Corp., secs. 836, 837, 844.

When the receiver of an insolvent corporation sues to recover the amount of unpaid subscription, it is then too late to plead that the subscription was induced by fraudulent misrepresentations. 91 U. S., 43; 6 Hun, 164; 3 Dill., 496; Buck v. Colbath, 3 Wall., 345; Field on Corp., 103; 3 Story, 411; 14 Pick., 483; 1 Paige, 102; 4 Keyes, 70.

It is settled that the written contract determines the rights and obligations of the subscriber. Parol evidence is not admissible to vary or contradict the writing. Corwith v. Culver, 69 Ill., 502; 43 N. J. Law, 442.

7. "Mere casual knowledge of facts acquired by one of the directors while in pursuit of his private business, with no intimation that they would affect the corporation, would not amount to notice." 2 Dis. (Ohio), 285; 23 How., 381; Zabriskie v. Cleveland, 86 Mo., 125; Wade on Notice, sec. 683.

WILLIAMS, ASSOCIATE JUSTICE.—This suit was commenced October 16, 1882, by appellee as receiver of the Texas Continental Meat Company, a Texas corporation, in the District Court of Victoria County, against certain stockholders of said company, some of whom were alleged in said petition to have been original subscribers to the capital stock of said company before its organization, or before its charter was filed, as shown by the following agreement, to-wit:

"VICTORIA, TEXAS, October 17, 1882.

"We, the undersigned, agree with Captain A. F. Higgs and with each other to subscribe for and hereby subscribe the amounts set opposite our respective names to the capital stock of the Texas Continental Meat Company, a corporation to be chartered under the laws of Texas, with headquarters at Victoria. The said company is to be stocked at $500,000, and we are to receive $2 of said stock for every dollar of cash subscribed. The amount of the capital stock not subscribed for or otherwise disposed of to remain in the company as reserve. It is further agreed, that should our whole subscription not be required, we will take stock in proportion to our subscriptions."

The charter, it is alleged, was filed on the 20th day of October, 1882. That at a meeting of the stockholders held soon after the filing of said

charter the board of directors of said company was authorized to issue for cash subscriptions shares of full paid stock of the company at the rate of $2 in stock for $1 in cash, such issue not to exceed $120,000, and said directors were to contract with Captain A. F. Higgs for the issuance to him of one-fourth of the capital stock as disposed of in the way of a bonus, and for certain rights, and to retain in the treasury of the company as a reserve the balance, to be disposed of as the growth and necessities of the company require. That by reason of the issuance of said stock two for one to each of said subscribers, each of them became liable to pay to said corporation the par value of said stock so agreed to be issued by said company to them and each of them, with interest.

The petition then shows, that after the organization of said Texas Continental Meat Company, and its actual commencement and transaction of business at Victoria, the said company made and entered into the following contract for the extension of its business at the city of Fort Worth, in Tarrant County, Texas, and for other and further subscriptions to its capital stock, which contract is in writing, executed and delivered for the consideration therein stated by the persons whose names are signed thereto, to-wit:

"Fort Worth, Texas, August 4, 1883.

"We, the undersigned, agree to subscribe and hereby do subscribe the sums of money set opposite our respective signatures to the capital stock of the Texas Continental Meat Company, a corporation created by and existing under the laws of Texas, and having its domicile in Victoria, Texas. And we offer said subscriptions to said company under the following stipulations and conditions, to-wit:

"1. That said company shall erect and operate as soon as possible, in or in the immediate vicinity of Fort Worth, a slaughter house, capable of killing, storing, and shipping not less than 250 grown cattle per diem.

"2. Should one-half the sum necessary to erect, equip, and operate said house be less than the amount of our subscriptions, only such a portion of our subscriptions shall be called for as will be equal to said half; provided further, that our subscriptions, or any portion thereof, shall be subject to call at any time until April 1, 1884, and that any portion thereof not then called in by said company shall by said company and by us be considered null and void.

"3. That for our said subscriptions we shall receive certificates of stock in said company in the following proportion, to-wit, for $60 cash we shall receive $85 in stock; provided, that we shall not be entitled to any issue of stock until we have responded to each call to the amount of our respective subscriptions, and that if we shall fail to pay any installments all previous payments shall be forfeited; provided, however, that when our certificates of stock are issued our rights, duties, obligations, and privileges shall relate back to the time of the acceptance of this offer.

"4. That immediately after the acceptance hereof by the company, the charter shall be so amended as to provide for thirteen directors, of whom six shall be immediately elected from the undersigned; but this agreement shall not operate so as to guarantee the election of parties who shall cease to own any stock, or dispose of so much as to be only nominally stockholders; that this shall have the full force and effect of a contract whenever accepted by said company, and the collections of said subscriptions may be enforced as any other debt or obligation."

And the persons who subscribed said instrument, some forty in number, were also made parties defendant, and with reference to the liability of whom the following allegations were made: "That the instrument aforesaid was delivered by said subscribers to said company at Victoria on the 25th day of August, 1883, and was then and there submitted to a meeting of the stockholders of said company, then and there assembled, for action thereon. That said stockholders' meeting, then and there acting in behalf of said company, did adopt the following resolution of acceptance of said proposition, to-wit:

"*Resolved,* That the proposition made to this company by J. P. Smith, H. C. Edrington, and others, of Fort Worth, Texas, under date of August 14, 1883, be and is hereby accepted, reference being had to the communication of August 25, 1883, from A. F. Higgs, Esq., and that the directors of this company be and are hereby empowered to do all things necessary to comply with the undertaking required of this company by said proposition. That the secretary of the company be directed to spread a copy of said proposition on the books of this company, and to officially transmit as the acceptance of said proposition a copy thereof, a copy of this resolution, and of said communication from A. F. Higgs, together with copies of any other proceedings of this body and of the directory as may be pertinent to the contract consummated by the acceptance of this proposition, to Fort Worth, for the examination and information of the signers of said proposition, notifying each subscriber of the acceptance of the proposition and where such copies can be seen and examined."

Plaintiff's petition alleges, that in pursuance of said contract the said Fort Worth subscribers elected their six directors, who, with an assistant secretary and treasurer, took immediate charge and management of the business of said corporation at Fort Worth, under the general direction of the whole board of directors, and that said corporation erected the slaughter house named in the contract, and proceeded to operate the same and continued to transact business at Fort Worth for sometime; and that by reason thereof, and by the execution and delivery of said contract and its acceptance as aforesaid, they and each of the subscribers to said contract became bound to pay to said company the full amount of the stock they contracted to be issued to them, to-wit, for each $60 of cash sub-

scribed $85, the amount of stock they were by the contract to receive. That so far as said subscription in cash was paid by said subscribers, the stock for $85 for every $60 paid was issued to them and each of them in proportion to his payment; that they had, each and all of them, contracted for $85 of stock for each $60 paid by them and each of them, and that by reason of said contract they were bound to pay, if necessary to secure the solvency of said company, the whole par value of the stock contracted to be issued to them and each of them. Plaintiff further alleges, that none of the subscribers have paid any more than the proportion of $60 for each $85 issued or to be issued to them. It was alleged that some of them had not paid the full amount they agreed to pay.

The petition then proceeds to set out the amount for which each of said Fort Worth defendants is liable.

The petition further alleges, that other defendants sued therein did not sign either of the contracts of subscription to the stock of said company, but bought stock at a discount and became liable and bound themselves to pay the par value of the stock issued or to be issued to each of them, the balance due thereon against each of said subscribers being stated as above.

The plaintiff then proceeds to show, that he was appointed receiver of all the property of said corporation by the District Court of Victoria County on the 16th day of April, 1884, at the suit of Ayres & Cannon et al., creditors of that company; that he had duly qualified; and that he brings this suit by virtue of an order of said District Court, as follows:

" In this cause the motions of Fagan & Osgood, the Sterne Fertilizer and Chemical Manufacturing Company, the New Orleans National Bank, creditors of the Continental Meat Company, defendant in this cause, coming on to be heard by the court, and it appearing to the court from the report of the receiver and from the record in this cause that all the property of said defendant, the Texas Continental Meat Company, has been sold under the order of this court, and that the proceeds thereof are not sufficient to pay the debts of said defendant company as the same have been proved in this case and have been approved by the orders of this court, and that there is still a large indebtedness of said defendant company unpaid, and that said unpaid indebtedness will be lost to the creditors of said defendant company unless the stockholders of said company be compelled to pay any balance or balances which may be due from each and all of said stockholders upon subscription of stock made by them or any of them or upon the stock of said company which has been issued to them or each of them.

" Now, therefore, the motion of said creditors is granted, and F. R. Pridham, receiver in this case, hereby ordered, directed, and empowered to institute proceedings at law or in equity to enforce the payment of any balance of stock which is unpaid upon subscription of stock made by

them or either of them or upon certificates of stock issued by said defendant company to any one or all of said stockholders, for the use and benefit of said creditors moving herein, and of all other creditors of said defendant company whose claims have been approved by this court; and that any sum or sums recovered in such legal or equitable proceedings be reported to this court in order that it may be distributed under the direction of this court among said creditors.    In case any of the stock of said company has been transferred or assigned and such assignment accepted by any person or persons, it is ordered that such person or persons be included in this order and sued as stockholders.    This order is made without prejudice to any legal or equitable defense which any one or the whole of said stockholders may have or make against such proceedings as may be taken against them or either of them.''

Plaintiff further alleges, that in the suit 1928 he had been appointed auditor to audit the claims of creditors against said company, and that he had audited and approved claims, which were afterwards approved and allowed by the court on May 30, 1885; and the order appointing him auditor, his report as such, specifying claims allowed, and the order of the court approving and allowing them, with a list thereof, were all attached as exhibits to the petition.    The claims they established aggregated $85,394.01, and that other claims amounting to $5315 were afterwards allowed by the court as valid debts against said company, which were also specified in exhibit.    The whole indebtedness of said company, as allowed and approved by the court, aggregated $90,682.78; that the receiver had paid to the creditors aforesaid the sum of $10,483.92, and that there now remains due and unpaid the sum of $80,198.86, with interest, and that there is no property or assets of said company to meet said debts, but that said company is totally and hopelessly insolvent.

Plaintiff then prays for judgment of such amount against each defendant as may be sufficient to pay off the indebtedness due by said company.

The petition alleged residence of some of the defendants to be in Victoria County and of others to be in various other counties of the State.

All defendants except those residing in Victoria County excepted to the petition because it showed that they were improperly sued in that county, and showed no right of Pridham to sue in his own name as receiver. They also duly pleaded their residence in other counties and their privilege to be sued there.

General demurrers and special exceptions were taken to the petition on the following grounds:

1. Misjoinder of parties defendant, because of lack of privity or joint obligation between the different defendants.

2. Misjoinder of distinct causes of action.

3. Because recovery was sought for excess of face value of stock over the amounts paid therefor, when such excess in the issue of stock was void.

4. Because the receiver sets up a cause of action upon which the corporation could not recover, and does not show that he is entitled to represent the rights of creditors, or set up any liability of such defendants to such creditors.

5. Because the petition fails to state facts showing liability of the company to the creditors named.

6. Because the allegations as to the allowance of claims in the receivership proceeding are not sufficient to show the establishment of the debts.

7. Because the petition fails to state the facts out of which each debt grew, with the names of the creditors and dates of accrual.

8. Because the amended petition (the same above stated) sets up a different cause of action from that originally alleged, and because the right thus asserted is barred by limitation.

The defendants sued on the Fort Worth contract further excepted specially to the petition, on the grounds that the contract made their liability to depend on conditions not alleged to have been performed, viz.:

1. The erection and operation of a slaughter house at Fort Worth.

2. That if one-half of the cost of erecting, equipping, and operating the slaughter house should be less than the amount subscribed, only such portion of that amount should be called for as would equal one-half of such cost.

3. The right of subscribers to forfeit amounts paid and refuse to take stock.

4. That the charter was to be amended so as to provide for thirteen directors, etc.

5. That the capital stock was to be $500,000 paid up, and no allegation that all had been paid or subscribed for.

The original petition was not so full as the amended petition in regard to the claims of creditors.

It charged that by their subscriptions the defendants became liable to the corporation for the par value of the stock. It did allege, however, that plaintiff sued as receiver appointed in the suit of Ayres & Cannon, by virtue of the order of the District Court of Victoria County, set up the amount of debts established against the corporation, and the insolvency of the corporation, and with these differences we infer that it was the same as the amended petition. It is not in the record, but there is an agreement partially stating its contents.

Several of the defendants sued as signers of the first contract pleaded in setoff debts which they alleged the corporation owed them for money advanced to it by them while operating its business.

The Fort Worth defendants pleaded general denial, and special pleas as follows:

1. That their signatures to the contract sued on were procured by false

representations made by the corporation through its officers as to its indebtedness and business prosperity.

2. That neither Pridham, as receiver, nor the corporation was the owner of the claim sued on, and that neither has any right or title to or interest in the claim sued on, but that it had been adjudged to Ayres & Cannon.

3. That the charter of said meat company provided for a capital stock of $500,000, divided into 5000 shares, be fully paid up; that there never has been but 3000 shares of said stock subscribed for, and that the subscription books of said company have long since been closed, and that therefore the said subscription is not binding upon them.

4. That prior to the 14th day of August, 1883, the company had organized under its charter and had commenced business, and that the instrument signed by the defendants is not an original subscription of stock, but the stock referred to therein was of the residue of stock belonging to said company which had not been subscribed for or disposed of prior to said 14th day of August, 1883; and that the directors and stockholders did thus determine and agree and dispose of the same as provided in said contract; and that at the time of signing of said instruments by defendants, the stock of said company was not worth in the market more than $60 for $85 face value, and intrinsically was not worth anything; that said contract was entered into on the part of the defendants in good faith and for the benefit of the company, and that they had paid to said company an amount of money set opposite their names in contract.

5. Limitation of two and four years.

6. That by the terms of the contract sued on it was agreed that one-half the cost of building and equipping refrigerating works at Fort Worth should be paid by the meat company, and that defendants who signed the contract of August 14, 1883, should pay the other half and no more; and that it was further provided in said contract, that if one-half of the sum necessary to locate, equip, and operate said houses be less than the whole of said subscription, as shown in said contract, only such portion of said subscription should be called for as would be equal to said half; that said equipments and building in full only cost the sum of $60,000, and by reason thereof these defendants would not be liable in any event for more than one-half of said subscription, and that they have paid more than the legal amount due from them to said company.

7. That at the time they signed said contract as aforesaid, and in order to induce them to do so, the said company represented to them that it was amply able to and would furnish one-half of the money necessary to purchase, locate, and equip the houses at Fort Worth, and that the signers of said contract would only have to furnish the other one-half; that said statement was false and untrue, and was made to deceive the said defendants, and by reason of said statement and others

hereinbefore pleaded that defendants were induced to sign their names to said contract, and that they would not have done so except for the fact that they believed in and relied on said statements as true, and did not know that they were false and untrue.

8. That the creditors named in the petition, so far as their claims accrued before defendants signed said contract, did not contract with said company or extend credit to it on the faith or credit of the defendants' subscription to said contract; and all the creditors whose claims accrued after the defendants signed said contract had full knowledge of the terms and conditions upon and by which defendants were to obtain stock in said company, and consented and acquiesced therein at and before the time such credit was extended to said company and at and before the creation of said debts.

9. That defendants after making payments as alleged elected to forfeit the amount so paid by them on the said subscription or contract of purchase, and to forfeit their right to demand and receive any of said stock of said company, and never did demand or receive from said company any of said shares of stock, and are therefore not liable any further on said contract or otherwise.

The plaintiff demurred generally to all the pleas in abatement, and filed the following special exceptions, all of which were sustained by the court:

1. To the plea setting up fraud on the part of the company and its officers in procuring subscription to said paper sued on, because fraud between the corporation and stockholders themselves can not affect the creditors of said corporation.

2. To the plea setting up illegality of the alleged issue of stock, because the defendants participated in the alleged illegal act and became members of the corporation, and are therefore estopped from denying their liability to creditors.

3. To the plea that the charter of said meat company fixed the capital stock at $500,000 fully paid, and that the full amount was never subscribed, because said stockholders were bound to the said creditors for any subscription by them made, whether the whole stock authorized by the charter of said corporation was subscribed or not.

4. To the plea of defendants setting up payment in full for the stock as subscribed for in said contract, because each defendant is bound to creditors to pay the par value of the stock contracted for.

5. To the plea setting up that the stock issued to them in excess of the amount paid to them was illegal, because acceptance of said stock binds the defendants to pay the par value thereof to creditors.

7. To the plea setting up offset and counter-claim made by the Victoria defendants on ground that it could not be allowable against creditors.

8. To the plea of limitation of two and four years respectively pleaded

by defendants, because in an action of this character the statute of limitations, as pleaded, can not avail the defendants as a defense to plaintiff's action.

9. To the plea setting up that the company agreed to pay one-half of the cost of building and equipping refrigerator works at Fort Worth, because said plea offers no defense to the action for the use of creditors.

10. To the plea setting up that the defendants were induced by false representations made by the officers and agents of the company to sign the contract, because the same can in no way affect plaintiff's rights to recover herein.

11. To the plea alleging right to forfeit the amount paid on the subscription contract, and that defendants did not demand or receive shares from the company, because defendants, as their pleadings show, were in a position to demand the rights and benefits of shareholders.

The court overruled all exceptions to the petition except those based on the failure of plaintiff to allege the facts showing the liability of the corporation for the debts set up in the petition. The plaintiff was required to amend so as to show the name of each creditor, the amount due him, the date at which it accrued, and the date of its approval by the court; and this having been done, all exceptions to the petition were overruled. All the exceptions above stated to defendants' pleadings were sustained. There is no question arising upon the pleadings of defendants except those so set out, and it is unnecessary to state such pleadings.

The cause was tried before the judge without a jury. In the progress of the trial the plaintiff introduced G. A. Levi, who testified that he had been secretary of the meat company at Victoria and that H. C. Edrington was the secretary at Fort Worth; that he as such secretary received from Edrington a certificate or statement showing names of Fort Worth subscribers, amount subscribed, amount paid, number of certificate, number of shares and value; that this was sent for his use in issuing the stock; that Edrington wired him not to issue the stock, but send blank certificates to him (Edrington) and let him issue them. Plaintiff then offered the statement in evidence, for what purpose is not shown. It was signed " H. C. Edrington, Loc. Sec. and Treas." Defendants objected to it, because its execution was not proved; it was hearsay, ex parte, and secondary. The execution of the paper having been shown, the court admitted it in evidence, and defendants excepted.

Among the creditors for whose benefit the suit is brought are the New Orleans National Bank, the State National Bank of New Orleans, C. M. Soria, Adoue & Lobit, Fagan & Osgood, Osgood & Gray, Texas Continental Transportation Company, and Ayres & Cannon.

The defendants attempted to show notice to each of these creditors of the agreement between the corporation and the stockholders for the taking

of stock by the latter at less than par.    The court below found that none of them had notice.

A. Baldwin was president and William Palfrey cashier of the New Orleans National Bank, and I. H. Kennedy president of the State National Bank.

It was shown that in the efforts of the promoters of the meat company to sell stock to Baldwin and Kennedy individually, each of them was informed of the fact in question a month or two before the credit was extended by their banks to the company.    It is not made to appear how those debts were created, or that either Baldwin or Kennedy acted for the banks in creating the debts.    It was also shown that a director of Baldwin's bank was present when Baldwin received the information.    Palfrey was also shown to have been informed of the nature of the subscriptions for less than par value of stock, but whether before or after the debt to his bank originated does not appear.

It was shown that Soria knew all about the terms upon which stock was issued before his claim against the company accrued, but how long before it is not shown; nor does it appear that his receiving knowledge had any connection with the extension of credit to the company, or was in such relation to it that he might be presumed to have remembered it when the debt was created.

Adoue, of the firm of Adoue & Lobit, received information that stock had been sold at a discount before that firm credited the corporation. Their debt accrued in January, 1884, and the only date given when Adoue received notice was in June, 1883, in an effort to sell to him, as an individual, stock in the company.

There was evidence vaguely tending to show notice to Fagan & Osgood, and Osgood of the firm of Osgood & Gray, but there is a conflict of evidence, and we conclude they had no notice.

The Texas Continental Transportation Company was organized at the same time as the meat company, and the two companies were intended to and did work together.    A. F. Higgs was president of the latter company and vice president of the former.    D. M. Higgs, his brother, was president of the former company, and both knew all about the disposition made of the stock, and we conclude that the fair inference is that the transportation company had notice.

It was shown that Ayres and Cannon both knew of the facts in question at the time they extended credit to the company.

The court below found that none of these creditors had notice.

The first conclusion of law of the court below was that the Fort Worth contract was executory, and that upon payment of the shares contracted for or any part of them the signer making it became a stockholder, whether certificates were issued or not; and that signers who failed to pay within

the time fixed in the instrument were never stockholders, and not liable for the debts of the corporation.

The second conclusion was that every stockholder who received shares at less than par value is liable for the difference between such value and the price paid, unless creditors had such knowledge as would charge them with express or implied assent to such sale. But for any debt created prior to such sale the subscriber was not liable.

The third conclusion held that all the stockholders were properly joined in the suit.

The fourth conclusion was that limitation had not run against creditors, and that the claims were conclusively established in the case of Ayres & Cannon against the company.

The fifth conclusion held that article 585, Revised Statutes, did not affect creditors with notice of sales below par of capital stock, and that the claims were conclusively established in the case of Ayres & Cannon against the meat company.

The fifth conclusion holds that the notice to Kennedy and Baldwin did not amount to notice to the banks of which they were respectively president, and was not admissible against the banks.

I. The first question for our consideration is whether the suit as brought could be maintained against all the defendants jointly in Victoria County.

Viewing it as an original proceeding, the claim of jurisdiction in that court over the persons of the defendants who resided in other counties must be justified, if at all, under some provision of our statutes regulating the venue of suits. Undoubtedly the venue of all suits, whether legal or equitable in their character, is fixed by those provisions.

The fourth subdivision of article 1198, Revised Statutes, in which is defined one of the exceptions to the general rule that defendants must be sued in the county of their residence declared by that article, provides that " where there are two or more defendants residing in different counties, suit may be brought in any county where one of the defendants resides."

Some of the defendants here resided in Victoria County, and the inquiry resolves itself into the question whether or not those defendants who had their domiciles in other counties were necessary parties to the suit as brought; for unless they were they could not, if this be regarded as an independent suit, be sued away from their homes.

Their subscriptions were several undertakings, and the rule which requires that joint obligors be sued jointly has no application. A bare action at law, either by the corporation or a creditor, to enforce the payment of a subscription of any one of them, could be brought only in the county of his residence. This suit, however, is not of that character. In its general structure and purpose it is an equitable proceeding in be-

half of all the creditors of an insolvent corporation, after the appropria-
tion of all its tangible assets to the debts, against subscribers to its cap-
ital stock, to have an accounting and a contribution from the defendants
of such proportion of their unpaid subscriptions as might be found neces-
sary to satisfy the debts.   In this character of suit it is essential to the
completeness of the remedy that the amount of the indebtedness of the
corporation, the amount of unpaid stock in the aggregate, the amount
due from each stockholder, and the proportion thereof necessary to dis-
charge the debts, should be definitely and finally ascertained.

It might also become necessary that the court ascertain who among the
subscribers are solvent and who insolvent, in order that the solvent ones
be required, as far as their subscriptions suffice, to contribute enough to
make up the deficiencies arising from insolvency of the others.

It is apparent, therefore, that in order to render certain and uniform
justice to each creditor and each stockholder, they should all as far as
practicable be brought into court.   Accordingly we find the rule that
equitable suits of this character must be brought by or for the benefit of
all the creditors, and against all delinquent subscribers to the stock of
the corporation who are solvent and within the jurisdiction of the court,
so well established by authority that we need only to refer to some of them.
Cook on Stock and Stockh., sec. 206, and note; 2 Mora. on Corp., sec.
897; Beach on Priv. Corp., sec. 700, and authorities cited.

These authorities commend themselves to our judgment as being sound
and as indicating the true doctrine on the subject.

It certainly should be within the power of creditors of an insolvent cor-
poration or their representatives pursuing the trust fund, which the law
declares unpaid subscriptions to capital stock to be, to bring all the parties
necessary to a full adjustment of their rights before the same court in one
suit, and secure an adjudication which will settle all their rights and lia-
bilities.   The principles and practice of equity afford such a remedy,
which in nowise conflicts with our statutes regulating venue, but is em-
braced within the scope of the fourth exception to article 1198.   Authori-
ties which maintain the right of a creditor to sue an individual stock-
holder to recover an unpaid subscription and apply it upon his debt
do not conflict with the rule above laid down.   In such suits an account-
ing and marshalling of assets and distribution of all the proceeds is not
sought, but a single creditor seeks satisfaction for his debt out of the un-
paid subscription of one stockholder.   Some authorities deny his right to
do so, and hold that the remedy in equity is exclusive.   Others admit
the right of the creditor to maintain such an action, but none of them
in America, so far as we have examined, deny the right of all the credit-
ors to join all delinquent members of the corporation in one proceeding
such as that now before us.   Some of them hold that the joining of all
the stockholders from whom subscriptions are due is not essential; but

others, and we think the better ones, hold that in so comprehensive a proceeding as a suit for an accounting and a determination of the pro rata part of the indebtedness which each subscriber shall pay, all must be joined, as far as known, unless they are insolvent or beyond the jurisdiction.

The appellee contends, with much reason, that the power to bring before it delinquent subscribers to the stock of the corporation was involved in the jurisdiction acquired by the District Court of Victoria County over the corporation and its assets by the original suit for the appointment of a receiver and the administration of all the assets of the corporation for the benefit of its creditors.

In view of the fact that the corporation was composed of its stockholders, and that they were, if they owed subscriptions, holders of assets which constituted in equity a trust fund for the payment of debts, and that some of them resided in Victoria County, we think the suit was properly brought there.

From this it results that the court did not err in overruling appellant's exception to the petition, nor in sustaining those of appellee to the answers asserting the privilege of defendants to be sued at their residence. It also follows that the exceptions to the petition on the ground of misjoinder of parties and causes of action were properly overruled.

II. The next contention in the assignments and briefs is, that the receiver had no right to sue in his own name. The statute in force at the time of his appointment and when this suit was brought expressly authorized receivers to sue (Revised Statutes, article 1468), and he showed in his petition that he had been ordered to sue by the court. It is true that neither statute nor order in terms directed the suit in his own name. But the suit was one which the corporation by the agreements sued on was estopped from bringing, and it is difficult to see any reason why its name should be used when the cause of action asserted never accrued to it. We understand both the order and the statute to authorize suits in the name of the receiver. Some authorities hold that unless a receiver is expressly authorized to sue in his own name, he can not, though authorized to prosecute a cause of action belonging to the party whose assets he holds, use his own name as plaintiff, but must use that of him to whom the right originally belonged. Others hold differently, and we think they are sustained by the stronger reason. High on Rec., 209, et seq. The law now in force expressly authorizes suits by a receiver in his own name. Sayles' Civ. Stats., art. 1464.

III. The point is made by exceptions to the petition that the stock alleged to have been issued to defendants in excess of the price to be paid was void under article 12, section 6, of the Constitution, which provides, " No corporation shall issue stock or bonds except for money paid, labor done, or property actually received, and all fictitious increase of stock

or indebtedness shall be void," and that therefore no liability on their part could grow out of it.

The first clause of this provision prohibits the issuance of stock unless it has been paid for; the second renders void "all fictitious increase of stock or indebtedness."

The petition does not allege any fictitious increase of stock, but that the original stock was sold at less than par to the defendants, in violation of the rights of creditors. Stock issued and disposed of for a valid consideration is not fictitious within the provision quoted. The language is not that all stock sold for less than its face value shall be void, but that "all fictitious increase of stock shall be void." In case of Stein v. Howard, 65 California, 617, an increase and sale by a corporation of its stock below par was held not to be fictitious under a constitution having the same provision. Peoria & Springfield Railway v. Thompson, 103 Illinois, 187, is another case which construes a constitutional provision very similar to our own.

We see nothing in the provision in question which changes the rule long established by courts of equity that stockholders of a corporation are liable to the creditors for the par value of the capital stock subscribed for or held by them.

IV. Several exceptions to the petition raise the question that it does not sufficiently show that the plaintiff is seeking to enforce the rights of creditors rather than those of the corporation against the defendants.

The allegations of the petition plainly show that the suit is for the benefit of the creditors and asserts a cause of action which the company could not.

We think also that the petition, as finally amended, was sufficiently specific in its allegations as to creditors. It was not necessary under the facts alleged to set out the cause of the action of the creditor against the corporation, as would be required in an original suit by the creditor, to establish it. The claims had all been established by the court in the receivership proceedings, and an allegation of that fact conclusively showed the liability of the corporation for them. This is an answer also to the claim of appellants that the claims of the creditors against the corporation were barred by limitation.

V. The original petition set up the same cause of action as that shown in the amended petition. In both the rights of creditors were asserted. The averments in the original petition were meager and defective, yet enough was stated to show the nature of the right asserted and that it was in behalf of creditors.

VI. The special exceptions of the Fort Worth defendants, that the petition showed no performance of the conditions of the subscription contract, by alleging that the slaughter house had been erected and operated, the charter amended, and capital stock all paid or subscribed, were not

well taken; nor was the exception, that the petition did not exclude the hypothesis that the defendants had elected to forfeit the amounts paid on stock and recede from the agreement to take stock, as they claimed the right to do under the contract.

The petition did allege that the house was erected, equipped, and operated. The fact that the company was compelled by financial embarrassment to suspend the business certainly could not release stockholders from their obligations to creditors. They did not stipulate for a successful operation of the business for all time.

It was not necessary to amend the charter in order to increase the number of directors. Rev. Stats., art. 575. That was done, and the objects of that provision in the contract attained.

There was no stipulation in their contract that all of the capital stock provided for in the charter should be paid up or subscribed before liability should attach to them. They were bound for the stock they subscribed for, whether all of the remainder was ever taken or not.

The contract gave to the subscribers no right of election to forfeit their payments and recede from the agreement or refuse to pay for the whole of the stock which they bound themselves to take.

VII. The exception to the petition, that it did not allege the cost of building and equipping the slaughter house at Fort Worth, should have been sustained, because the amount of the liability of the Fort Worth subscribers depended on that fact. They did not, as we construe the contract, unconditionally agree to pay the amounts subscribed to the paper for stock at the price specified, but that they would pay those sums only in case half the cost of building, etc., should be equal to the amount subscribed. If one-half of such cost should be less than the amount subscribed, then they agreed to pay only such part of the latter amount as would be equal to half the cost.

It may be admitted that by their contract they became liable to creditors of the corporation for the full face value of such stock as they thereby subscribed for, and still the question would remain, what amount of stock did they agree to take? They had the right to attach conditions to their subscriptions (Cook on Stock and Stockholders, 83), and this was clearly one by which the amount of money they were to pay and the amount of stock they were to receive was to be or might be limited.

In setting out the contract and in failing to negative the hypothesis that half the cost of the building was less than the amount signed for, the petition left it uncertain what amount plaintiff was entitled to recover. It is true that there are general allegations that by the contract the defendants became liable for such amounts, but these were conclusions and not good against special exceptions.

VIII. From what has been said concerning the overruling of exceptions to the petition, it will follow that there was no error in sustaining

plaintiff's exceptions to pleas of defendants presenting the same points as were involved in the exceptions.

IX. The exceptions of plaintiff to the answers of some of the Victoria defendants, pleading in setoff debts due to them from the company, were correctly sustained. Cook on Stock and Stockh., secs. 193, 227d.

The cases referred to by appellants were suits by a creditor against an individual stockholder and not a suit in equity against all; and the distinction between the two proceedings is recognized in those cases. Mathez v. Neidig, 72 N. Y., 100; Garrison v. Howe, 17 N. Y., 458; Agate v. Sands, 73 N. Y., 620.

X. There was no error in sustaining exceptions to the pleas setting up that the subscriptions of the Fort Worth defendants were obtained by fraudulent representations. Enough facts were not stated to make that a good defense against the corporation itself.

But admitting that the facts, if timely set up, would have availed against the company, they could not be of any avail in this proceeding as a defense against creditors. Cook on Stock and Stockh., secs. 154–210, note 141; Knox v. Ogilvie, 22 How., 380.

XI. The ruling sustaining exceptions to the plea of the Fort Worth defendants, setting up that they bought the stock contracted for by them from the residue of stock left on hand, and paid all they agreed to pay, was not erroneous. By this written contract they plainly agreed to take so much of the capital stock of the corporation as the sum for which they bound themselves would pay for, at a rate below the par value of the shares they were to get. This was an appropriation to them, by agreement between them and the corporation, of portions of the capital stock, the trust fund out of which the creditors had the right to seek satisfaction; and while it conferred upon them the right to the stock, as between them and the company, it also bound them to make good to creditors the amount called for by the stock whenever that might become necessary to pay the debts. The form of the contract between them and the corporation is immaterial. Equity looks at its substance and effect upon the rights of creditors; and thus regarded, it was only a subscription by them to the stock at a price below its par value. This was illegal as against the creditors, whom the law will not allow to be deprived of the fund which it holds sacred for their satisfaction, by any device or contrivance of the corporation and the subscribers. Cook on Stock and Stockh., sec. 199; 1 Mora. on Corp., sec. 427; 2 Mora. on Corp., sec. 781; Upton v. Tribilcock, 91 U. S., 45; Tayl. on Corp., sec. 124.

It is claimed that article 585, Revised Statutes, which provides that the directors may dispose of the residue of the capital stock at any time remaining unpaid, in such manner as the by-laws may prescribe, authorizes such a transaction as that in question, and relieves the subscribers from the operation of the rule we have just stated.

There is no purpose shown here to authorize the directors to release subscribers to stock from their obligations to creditors.

The directors are authorized to dispose of residue of stock in such manner as the by-laws may direct. It was not alleged that any by-law on the subject had been adopted, and for that reason the plea was defective. But a more direct and positive statutory provision than this must be shown to satisfy us of the legislative intent to authorize subscriptions to the capital stock of a corporation at less than its par value (as was this contract by its very terms) and a release of the subscribers from their liability to creditors. The charter fixed the capital stock, and the law gives it the effect that all of such stock should be paid up, if necessary to pay creditors. We can not see that, by the provisions quoted, the Legislature intended to authorize the by-laws of the corporation to change the effect of the charter, but only to regulate the disposition of the residue of stock in such manner as was consistent therewith. This disposes of the further contention of appellee that this statute put creditors upon such inquiry as would have affected them with notice of subscriptions to or sales of stock at a discount.

XII. The defendants' plea of the statute of limitations can not avail them as a defense, and they were properly struck out on exceptions. No cause of action against the subscribers ever accrued to the creditors until they had exhausted their remedy against the corporation and had all of its property applied to their claims. The subscribers could not be called on to pay, and were not subject to suit, until it was established that the amount due from them was necessary to satisfy the indebtedness. The statutes of limitation were not applicable to the case.

XIII. We think the certificate or statement of Edrington was hearsay, and that its admission in evidence was error. In the view we take of the case, however, this would not, alone, necessitate a reversal of the judgment.

Several points are made upon the failure of the court below to find upon certain issues, as requested. In view of the disposition to be made of the case it will not be necessary to notice them further than they may be involved in the discussion of other questions.

XIV. This brings us to a consideration of the points raised upon the conclusions of the court below. What we have already said sufficiently indicates our views as to the liability of the subscribers of the two contracts for the difference between the par value of the stock and the amount they agreed to pay for it. They are liable not only for the amount they agreed to pay, but for the full face value of the stock they subscribed for. In the case of the Fort Worth defendants this will depend upon the facts that may be alleged and shown as to the cost of building and equipping the slaughter house at Fort Worth, as explained above.

The Victoria appellants claim that the court erred in fixing the liability of the Fort Worth defendants, in holding that they were to be treated as shareholders only from the time they made payments, and charged with the par value of stock only where they had made payment on their subscriptions.

We think the position of the appellants is well taken. As before seen, the contract signed by the Fort Worth defendants was a subscription for such portion of the capital stock as would be taken by the amounts they agreed to pay at the rate specified.

The error of the court in not sustaining exceptions to the petition as above pointed out would become immaterial as to the Fort Worth defendants by the judgment rendered, but this complaint of the Victoria defendants raises (as they have the right to do) the question as to the full liability under the Fort Worth contract, and that makes it necessary to go fully into that. It is not necessary that shares of stock should have been actually issued and delivered to any of the subscribers. Their subscription fixes their liability, though the issuance and acceptance of shares of stock would also fix liability for the full face value.

XV. We think that the notice given to Baldwin and Kennedy, presidents of the banks, was not sufficient to charge the banks with notice of the arrangement between the corporation and its stockholders, in the absence of evidence that they acted for the banks in extending credit to the corporation at such time and under such circumstances as to authorize the inference that the knowledge formerly acquired in their individual transactions was still present before their minds. As the evidence stood, the court did not err in holding that it was not admissible against the banks. They might be shown to have received notice through their presidents, but this evidence did not go far enough.

It may be said of the information to Adoue and Soria, that it is not so connected with the creation of their claims against the company that they should be held to have known it at that time.

Parties engaged in business can not be required to store away in their memories all the facts which they learn, so as to be able to call them up at any time in the future, to affect other transactions than that in which the knowledge was acquired. Such information has not the characteristics of notice in law, unless the transaction to be affected thereby took place under such circumstances as would lead to the reasonable conclusion that the fact reported was still remembered. Ogden v. Hearn, 24 Ill., 60.

The proof as stated in the record showed, as we conclude, that the Texas Continental Transportation Company and Ayres & Cannon had notice, and the court below should have so found; and so with the transportation company.

The evidence on these points may be different on another trial, and we merely indicate our views as to the law applicable to the evidence as we find it in the record.

We think the court below was right in holding that creditors having notice at the time their claims arose, of the arrangement between the corporation and the subscribers, could not hold the latter responsible for more than they agreed to pay; and it necessarily resulted from this ruling that those of the Victoria stockholders who were also creditors of the corporation could not demand from the subscribers the difference between what they agreed to pay and the face of the stock. They could not therefore participate in the fund that was to be contributed by stockholders to pay creditors not having such notice.

It appears, however, that some of the subscribers have never paid all they agreed to pay, and a recovery of that is sought in this case. That should when recovered constitute a fund for all of the creditors, whether with or without notice, for as to that creditors without notice have no priority over the others.

We have found it impracticable to follow in our opinion all of the assignments of error in the several briefs of the parties in their order; but we believe it will be found that what is said above disposes of all the questions raised by any of them in this appeal. The assignments of the defendant Kempner raise the same questions as are discussed in connection with the contentions of the Fort Worth defendants. His case does not differ in principle from those of other subscribers. He took stock from the corporation at less than its face value, and must be held liable to creditors for the difference between that and the amount he paid.

Because of the errors pointed out the judgment must be reversed; and inasmuch as the pleadings and evidence are not sufficient to enable us to determine the extent of the liability of the Fort Worth subscribers, it is not in our power to render a judgment here settling all the rights of the parties.

The cause will therefore be remanded for further proceedings in accordance with this opinion.

*Reversed and remanded.*

Delivered October 27, 1892.

Justice PLEASANTS did not sit in this case.