BALDWIN v. HASKELL NAT. BANK.

(Supreme Court of Texas. Feb. 1, 1911.)

1. ALTERATION OF INSTRUMENTS (§ 6*)—"MATERIAL ALTERATION"—TIME FROM WHICH INTEREST RUNS.

It is a material alteration of an instrument to change the time from which the interest is to run, either by the insertion, alteration, or erasure of words, whether the time is thereby accelerated or delayed.

[Ed. Note.—For other cases, see Alteration of Instruments, Dec. Dig. § 6.*

For other definitions, see Words and Phrases, vol. 5, pp. 4405, 4406; vol. 8, p. 7717.]

2. ALTERATION OF INSTRUMENTS (§ 16*)—EFFECT—WRITTEN INSTRUMENTS IN GENERAL.

A material alteration in an instrument without the consent of the maker will avoid all recovery thereon.

[Ed. Note.—For other cases, see Alteration of Instruments, Dec. Dig. § 16.*]

3. ALTERATION OF INSTRUMENTS (§ 6*)—"MATERIAL ALTERATION"—TIME FROM WHICH INTEREST RUNS.

The addition of the word "date" in writing after the word "maturity" in a note made out on a printed form, and originally bearing interest from maturity, making it bear interest from "maturity date," is a material alteration.

[Ed. Note.—For other cases, see Alteration of Instruments, Dec. Dig. § 6.*]

4. ALTERATION OF INSTRUMENTS (§ 6*)—EFFECT—MEMORANDUM.

The effect of the alteration of a note bearing interest from maturity by the addition of the word "date" after the word "maturity" cannot be defeated on the ground that it was a mere memorandum; the alteration having been made by the cashier of the payee bank to make the note conform to his understanding of the real contract between the parties.

[Ed. Note.—For other cases, see Alteration of Instruments, Dec. Dig. § 6.*]

5. ALTERATION OF INSTRUMENTS (§ 20*) — EFFECT—NEGOTIABLE INSTRUMENTS.

Where the alteration of a note bearing interest from maturity by the addition of the word "date" after the word "maturity" was neither convinous nor fraudulent, but was made with the honest purpose of making it conform to the real agreement of the parties, the alteration does not discharge the maker from his liability on the original indebtedness.

[Ed. Note.—For other cases, see Alteration of Instruments, Dec. Dig. § 20.*]

6. APPEAL AND ERROR (§ 1178*)—DISPOSITION OF CAUSE — REVERSAL — NECESSITY FOR REMAND TO LOWER COURT.

Where a judgment for the payee of a note is reversed because of an alteration which does not affect the right of the payee to recover on the original indebtedness, but the evidence is conflicting as to whether, independent of the terms of the note, the maker was to pay interest for the year he was allowed in which to pay the debt, and there is no finding upon that question, the judgment will not be reformed, but will be reversed and remanded for further proceedings.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1178.*]

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by the Haskell National Bank against J. L. Baldwin. From a judgment of the Court of Civil Appeals affirming a judgment for plaintiff (124 S. W. 443), defendant brings error. Reversed and remanded.

Jacob C. Baldwin and Helton & Murchison, for plaintiff in error. H. G. McConnell and Gordon B. McGuire, for defendant in error.

RAMSEY, J. For some years before January 28, 1907, J. L. Baldwin had been a customer of the Haskell National Bank. On or before that date he owed the bank several thousand dollars. We gather from the record that the relations between the parties had become mutually unsatisfactory. Baldwin seems to have thought that the bank was charging him both usurious and excessive interest, while the bank had concluded that his indebtedness to it was excessive, and that for other reasons he was not a desirable customer. After considerable negotiation, it was finally agreed that Baldwin should pay his indebtedness to the bank down to the sum of $2,050, and that the bank should take his note for this amount due in one year.

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

Accordingly the amount agreed to be paid to the bank was in fact duly paid, and thereupon the following note was executed, on one of the blank notes used by the bank: "$2,050.00. Haskell, Texas, Jan. 28th, 1907. On or before one year after date for value received, I, we or either of us promise to pay to the order of the Haskell National Bank, two thousand and fifty and no/100 dollars at their banking house in Haskell, Texas, with 10 per cent. interest per annum from maturity —— until paid. And in the event default is made in the payment of this note at maturity, and it is placed in the hands of an attorney for collection, or suit is brought on the same, then an additional amount of 10 per cent. on the principal and interest of this shall be added to the same as attorney's fees. The makers and indorsers, severally, waive presentment for payment, protest and notice of protest, and the bringing of suit at the first term of court upon nonpayment of this note after maturity, and also consent that time of payment may be extended without notice thereof, whether same is done with or without consideration. J. L. Baldwin."

It was shown that Baldwin had executed many notes to the bank, and that in every case by their terms they bore interest from maturity, and that this was the custom of the bank generally. It appears from the evidence that almost immediately after the execution of the note Baldwin called the attention of the cashier of the bank to the fact that the note drew interest from maturity, which was not admitted by the cashier until he had examined the note, which confirmed Baldwin's position, whereupon the cashier claimed that there was a mistake, and that conformably to their agreement the note should have drawn interest from date. It also appears from the evidence of the cashier, Couch, that he said to Baldwin that one Ballard, who had been active in the negotiations, knew that the note was to bear interest from date, who replied, in effect, that he would abide by whatever Ballard said. This statement, however, is not admitted by Baldwin. Soon thereafter Couch saw Ballard, who said to him, as they both testify, that the agreement was express and unequivocal that the note should bear interest from date. Some little time after this, left rather indefinite in the evidence, Couch wrote, in pencil, in the blank space in the note, after the word maturity, the word "date." Touching the circumstances, purposes, and reasons for his so doing, he says: "I put the memoranda there after the talk I had with Ballard (one of the bank directors) in which he said it would be all right, for the purpose of a memorandum to Mr. Baldwin as well as the bank for the future, as I did not know but what I might die, or might not be there possibly at the settlement of this note, and I wanted a little notation on there to show what the contract was." There is evidence in the record

133 S.W.—55

tending to show that Baldwin from the first protested against any change in the note, and also denied the facts which would have authorized a court even to have decreed a change. It is well settled that "it is a material alteration of an instrument to change the time from which interest is to begin to run, either by the insertion, alteration, or erasure of words, whether the time is thereby accelerated or delayed." 3 Enc. L. & P. 419. That a material alteration in an instrument, without the consent of the maker, will avoid all recovery on same, is no longer an open question in this state. Otto v. Halff & Bro., 89 Tex. 384, 34 S. W. 910, 59 Am. St. Rep. 56.

Was the alteration material? The Court of Civil Appeals held not. This holding seems to have been based on the theory that there was no "difference between the expressions 'maturity' and 'maturity date.'" If, determined in the light of all the facts, and having reference to the contentions of the several parties, it should be held that the inserted word "date" was intended not to supersede the printed word "maturity," and to express a different intention from that evidenced by the language as it stood, but was to be read in harmony with such printed word and as meaning the same thing, the addition of the word "date" would be but idle surplusage, and there would be some fair warrant for the opinion of the Court of Civil Appeals. But it seems to us clear that this was not the intention of the cashier, nor do we believe that there is any testimony in the record which presents this view. Nor do we think in the light of the situation presented by the contention of the respective parties can this intention be gathered from the instrument. It is a rule of almost universal application that "where, as in the use of printed forms, a contract is partly printed and partly written, and there is a conflict between the printing and the writing, the writing will prevail." 9 Cyc. 584. Again while, as used, there may be no irreconcilable repugnancy in the use of the words together, "maturity date," and as applied to the controversy here involved, it is utterly unreasonable to conclude that no change was wrought or intended to be wrought in the instrument sued on by the insertion of the word "date." If the note had been originally drawn so as to bear interest from date, and if thereafter without the consent of the bank plaintiff in error had inscribed in a blank space left in the note the word "maturity," so as to make same read, if both words are to be considered as parts thereof, "date maturity," could such a change be upheld on the ground that it meant the same thing as originally written? We cannot think so. In any event, it cannot be denied that the insertion of the word "date" left ambiguous and uncertain what was, when the note was signed, left beyond doubt clear and explicit. Nor do we think that the legal effect

of the evident alteration can be defeated on the ground that it was a mere memorandum. As we view the matter, it is quite a different alteration from a mere marginal memorandum, which is sometimes treated as no part of the note proper, but simply as a memorandum for information or convenience.

2. The bank prayed in the court below in the petition on which the case was tried that, if the note should be held to be invalid, it might recover on the original indebtedness which it was the purpose of the note to evidence, setting same out fully and in detail, and asks in this court that if we should adjudge that no recovery can be had in its favor for the amount of the indebtedness shown by the undisputed evidence. The amount of this indebtedness as claimed by the bank and for which judgment is sought under this count of the petition is the sum of $2,411.05. An examination of the evidence tends strongly to show that if computed with reference to Baldwin's notes then held by the bank, and his admitted overdraft, that this was the sum which he owed it, after applying all the sums in money and drafts which he had about this time paid. However, the evidence of all the witnesses is to the effect, in substance, that Baldwin was claiming that the bank had charged him what he calls "double interest" in a very considerable sum. He claims that the admitted credit allowed him, $361.05, was deducted in the computation made at the time as an allowance for interest theretofore improperly charged him. On the other hand, it seems to have been the contention of the bank that no usurious or excessive interest was at any time charged and that credit in the sum above named was allowed plaintiff in error, in order to adjust the difference between them as to methods and manner of payment and to secure a satisfactory arrangement of the indebtedness. Whatever may be the fact, it is certain that all the parties agreed that the real amount due the bank, after the various payments, was the sum of $2,050, and this sum we are authorized to accept as the fixed and definite amount of Baldwin's debt.

We think a fair review and analysis of the evidence demonstrates that the change in the note which we have been discussing was neither covinous nor fraudulent, but was made with the honest purpose to make it conform to the real agreement of the parties, and that such alteration should not therefore discharge Baldwin from all liability. This was the rule laid down by this court in an opinion by our present Chief Justice in Otto v. Halff & Bro., 89 Tex. 384, 34 S. W. 910, 59 Am. St. Rep. 56. The argument of the court there seems to us, not only unanswerable, but to so effectually settle the question that further discussion or citation of authority is unnecessary.

The evidence of both parties, independent of the terms of the note, shows that Baldwin was to have one year within which to pay the sum agreed upon. Whether this was to be with or without interest is a question disputed in the evidence, and with reference to which there is no finding in the court below or in the Court of Civil Appeals.

Again, it is averred by the bank that the change in the note by the addition of the word "date" was agreed to by Baldwin. It may be that by their request for a rendition of proper judgment in this court that the defendant would be held so far as our action is concerned to have waived his right to a submission of this issue. But in view of the fact that the evidence does raise the issue as to the date of the payment, independent of the note, and since there was no finding on the question of interest, we would not be authorized, for this reason, to here reverse and reform the judgment. For this reason, the judgment of the Court of Civil Appeals and that of the district court will be reversed, and the cause remanded for further proceeding in accordance with this opinion.