## J. C. BALDWIN v. HASKELL NATIONAL BANK.

No. 2120.    Decided February 22, 1911.

**1.—Note—Alteration.**

The alteration in a promissory note of the date from which interest is payable, without consent of the maker, renders the instrument void.    (Pp. 124, 125.)

**2.—Same—Case Stated.**

A note bearing interest from maturity having been executed to a bank, and a controversy arising as to whether it was not intended to bear interest from date, the cashier wrote the word "date" therein in pencil after the printed word "maturity." Held, that the addition made under such circumstances could not be construed as mere surplusage rendering the interest still payable from date of maturity (maturity date) but the alteration was material, making the date from which the instrument was to draw interest at least ambiguous, and made the note void.    (Pp. 123-125.)

**3.—Same—Recovery on Original Indebtedness.**

Where the alteration of a promissory note by the payee was not fraudulent, but made for the purpose of conforming it to the actual contract it was believed to have been given to evidence, the payee may still, under appropriate pleadings, recover the original indebtedness with statutory interest.    (Pp. 125, 126.)

ON MOTION FOR REHEARING.

**4.—Practice in Supreme Court—Waiver of Questions of Fact—Rendering Judgment.**

Recovery on a promissory note having been reversed and the cause remanded because of alteration avoiding the instrument, plaintiff, the defendant in error, who had also sought in the alternative to recover on the original indebtedness, by waiving all controverted questions of fact as to the amount thereof, could have the judgment reformed and rendered by the Supreme Court for the undisputed debt. (Pp. 126, 127.)

Error to the Court of Civil Appeals, Third District, in an appeal from Haskell County.

The bank sued Baldwin and recovered judgment. It was affirmed on appeal by Baldwin, who thereupon obtained writ of error.

*Helton & Murchison,* for plaintiff in error.—Where a contract is partly printed, and partly written, and there is a conflict between the printing and the writing, the writing will prevail. 9 Cyc., 584; Simkins on Contracts, 225.

Any change in a promissory note which necessitates a violation of the rules of English grammar, and which requires of words an unusual and strained meaning and construction, in order to give the note the same meaning and legal effect after it was changed, as it had before it was changed, is a material alteration of the note. Simkins on Contracts, 225.

Any alteration made by the payee of a note, without the consent of the maker, and which in any degree varies the legal effect of the instrument to the prejudice of the maker, is a material alteration and destroys the note.. Otto v. Halff & Bro., 89 Texas, 384; Park v. Heirs of Glover, 23 Texas, 469; Bogarth v. Breedlove, 39 Texas, 561; Harper v. Stroud, 41 Texas, 367; Bowser v. Cole, 74 Texas, 322; Meade v. Sandidge, 9 Texas Civ. App., 360; Dewees v. Bluntzer, 7 S. W., 820; 2 Am. & Eng. Ency. of Law, 228, notes 2, 257, 262, 268.

*H. G. McConnell* and *Gordon B. McGuire,* for defendant in error. —When a note is materially altered and therefore void, in order for the holder to recover on the original indebtedness it is necessary to explain such alteration to the extent of showing that it was not for a fraudulent purpose, and if the alteration is not a material one, intent, good or bad, is not material and no explanation is necessary. Otto v. Halff Bros., 89 Texas, 367; Daniel on Negotiable Instruments, sec. 1416.

The addition of the word "date" did not vary the legal effect of the instrument to the prejudice of the maker, but left same as it was before such addition and was immaterial.

MR. JUSTICE RAMSEY delivered the opinion of the court.

For some years before January 28, 1907, J. L. Baldwin had been a customer of The Haskell National Bank. On or before that date he owed the bank several thousand dollars. We gather from the record that the relations between the parties had become mutually unsatisfactory. Baldwin seems to have thought that the bank was charging him both usurious and excessive interest, while the bank had concluded that his indebtedness to it was excessive and that for other reasons he was not a desirable customer. After considerable negotiation it was finally agreed that Baldwin should pay his indebtedness to the bank down to the sum of two thousand and fifty dollars and that the bank should take his note for this amount due in one year. Accordingly the amount agreed to be paid to the bank was in fact duly paid and thereupon the following note was executed, on one of the blank notes used by the bank:

"$2050.00    .    Haskell, Texas, Jan. 28, 1907.

"On or before one year after date for value received, I, we or either of us promise to pay to the order of the Haskell National Bank, two thousand and fifty and no-100 dollars at their banking house in Haskell, Texas, with ten percent interest per annum from maturity . . . until paid. And in the event default is made in the payment of this note at maturity, and it is placed in the hands of an attorney for collection, or suit is brought on the same, then an additional amount of ten percent on the principal and interest of this shall be added to the same as attorney's fees. The makers and endorsers, severally, waive presentment for payment protest and notice of protest, and the bringing of suit at the first term of court upon nonpayment of this note after maturity, and also consent that time of payment may be extended without notice thereof, whether same is done with or without consideration.    .

"J. L. Baldwin."

It was shown that Baldwin had executed many notes to the bank and that in every case by their terms they bore interest from maturity and that this was the custom of the bank generally. It appears from the evidence that almost immediately after the execution of the note Baldwin called attention of the cashier of the bank to the fact that the note drew interest from maturity, which was not admitted by the cashier until he had examined the note, which confirmed Baldwin's position, whereupon the cashier claimed that there was a mistake, and that conformably to their agreement the note should have drawn interest from date. It also appears from the evidence of the cashier, Couch, that he said to Baldwin that one Ballard, who had been active in the negotiations, knew that the note was to bear interest from date, who replied, in effect, that he would abide by whatever Ballard said. This statement, however, is not admitted by Baldwin. Soon thereafter Couch saw Ballard who said to him, as they both testify, that the agreement was express and unequivocal that the note should bear interest from date. That some little time after this, left rather indefinite in the evidence, Couch wrote, in pencil, in the blank space in the note, after the word maturity, the word, "date." Touching the circumstances, purposes and reasons for his so doing he says: "I put the memoranda there after the talk I had with Ballard (one of the bank directors) in which he said it would be all right, for the purpose of a memorandum to Mr. Baldwin as well as the bank for the future, as I did not know but what I might die, or might not be there possibly at the settlement of this note, and I wanted a little notation on there to show what the contract was." There is evidence in the record tending to show that Baldwin from the first protested against any change in the note, and also denied the facts which would have authorized a court even to have decreed a change.

It is well settled that "it is a material alteration of an instrument to change the time from which interest is to begin to run, either by the insertion, alteration or erasure of words, whether the time is thereby accelerated or delayed." 3 Enc. L. & P., 419. That a material alteration in an instrument, without the consent of the maker,

will avoid all recovery on same is no longer an open question in this State. Otto v. Halff & Bro., 89 Texas, 384 (59 Am. St., 56).

Was the alteration material? The Court of Civil Appeals held not. This holding seems to have been based on the theory that there was no "difference between the expression 'maturity' and maturity date." If, determined in the light of all the facts, and having reference to the contentions of the several parties, it should be held that the inserted word "date" was intended not to supersede the printed word maturity, and to express a different intention from that evidenced by the language as it stood, but was to be read in harmony with such printed word and as meaning the same thing, the addition of the word "date" would be but idle surplusage and there would be some fair warrant for the opinion of the Court of Civil Appeals. But it seems to us clear that this was not the intention of the cashier, nor do we believe that there is any testimony in the record which presents this view. Nor do we think in the light of the situation presented by the contention of the respective parties can this intention be gathered from the instrument. It is a rule of almost universal application that "where, as in the use of printed forms, a contract is partly printed and partly written, and there is a conflict between the printing and the writing, the writing will prevail." 9 Cyc., 584. Again while as used there may be no irreconcilable repugnancy in the use of the words together, "maturity date," it must strike any one as, under any circumstances quite unusual and as applied to the controversy here involved it is utterly unreasonable to conclude that no change was wrought or intended to be wrought in the instrument sued on, by the insertion of the word "date." If the note had been originally drawn so as to bear interest from date, and if thereafter without the consent of the bank, plaintiff in error had inscribed in a blank space left in the note, the word maturity, so as to make same read, if both words are to be considered as parts thereof, "date maturity," could such a change be upheld on the ground that it meant the same thing as originally written? We can not think so. In any event it can not be denied that the insertion of the word "date" left ambiguous and uncertain what was, when the note was signed, left beyond doubt clear and explicit.

Nor do we think that the legal effect of the evident alteration can be defeated on the ground that it was a mere memorandum. As we view the matter it is quite a different alteration from a mere marginal memorandum, which is sometimes treated as no part of the note proper but simply as a memorandum for information or convenience.

2. The bank prayed in the court below, in the petition on which the case was tried, that if the note should be held to be invalid that it might recover on the original indebtedness which it was the purpose of the note to evidence, setting same out fully and in detail, and asks in this court that if we should adjudge that no recovery can be had on its favor for the amount of the indebtedness shown by the undisputed evidence. The amount of this indebtedness as claimed by the bank and for which judgment is sought under this count of the petition is the sum of two thousand four hundred and eleven and five one-hundredths dollars. An examination of the evidence tends strongly to show that if computed with reference to Baldwin's notes then held by the bank,

and his admitted overdraft that this was the sum which he owed it, after applying all the sums in money and drafts which he had, about this time, paid. However, the evidence of all the witnesses is to the effect, in substance, that Baldwin was claiming that the bank had charged him what he calls "double interest," in a very considerable sum. He claims that the admitted credit allowed him, three hundred and sixty-one and five one-hundredths dollars was deducted in the computation made at the time, as an allowance. for interest theretofore improperly charged him. On the other hand it seems to have been the contention of the bank that no usurious or excessive interest was at any time charged and that credit in the sum above named was allowed plaintiff in error, in order to adjust the differences between them as to methods and manner of payment and to secure a satisfactory arrangement of the indebtedness. Whatever may be the fact, it is certain that all the parties agreed that the real.amount due the bank, after the various payments, was the sum of $2,050, and this sum we are authorized to accept as the fixed and definite amount of Baldwin's debt.

We think a fair review and analysis of the evidence demonstrates that the change in the note, which we have been discussing, was neither covinous nor fraudulent, but was made with the honest purpose to make it conform to ·the real agreement of the parties and that such alteration should not therefore discharge Baldwin from all liability. .This was the rule laid down by this court in an opinion by our present Chief Justice in Otto v. Halff & Bro., 89 Texas, 384. The argument of the court there seems to ·us, not only unanswerable, but to so effectually settle the question that further discussion or citation of authority is unnecessary.

The evidence of both parties, independent of the terms of the note, shows that Baldwin was to have one year within which to pay the sum agreed upon. Whether this was to be with or without interest is a question disputed in the. evidence and with reference to which there is no finding in the court below or in the Court of Civil Appeals.

Again, it is averred by the bank that the change in the note by the addition of the word, "date," was agreed to by Baldwin. It may be that by their request for a rendition of proper judgment in this court that the defendant would be held, so far as our action is concerned, to have waived his right to a submission of this issue. But in view of the fact that the evidence does raise the issue as to the date of the payment, independent of the note, and since there was no finding on the question of interest, we would not be authorized, for this reason, to reverse and reform the judgment. For this reason the judgment of the Court of Civil Appeals and that of the District Court will be reversed and the cause remanded for further proceeding in accordance·with this opinion.

ON MOTION FOR REHEARING.

In its motion for a rehearing seasonably filed in this court, the defendant in error expressly remits "all amounts due it except the said principal sum of $2,050 with six percent interest thereon from the 28th day of January, 1908, the date on which same was to have been

paid, and does here now expressly waive its right to a submission of the issue of the question as to plaintiff in .error having authorized the change in the note" and asks that its motion for rehearing be granted and our judgment be reformed so as to decree to it a recovery for the sum admitted to be due, with interest from the date, January 28, 1908, when under the testimony and contention of plaintiff in error such debt, we think interest was to become due and payable. On such waiver and remittitur it logically follows that the motion should be granted and judgment so rendered.

It is therefore ordered that the motion for rehearing be and the same is hereby granted, and judgment is here rendered in favor of the Haskell National Bank, against J. L. Baldwin for the sum of $2,050, with six percent interest per annum from January 28, 1908. The costs of appeal to the Court of Civil Appeals and of this writ of error to this court are adjudged against the defendant in error and all other costs are adjudged against plaintiff in error.