BURLESON et al. v. DAVIS.

(Court of Civil Appeals of Texas. Austin. Nov. 8, 1911. Rehearing Denied Dec. 20, 1911.)

1. BANKS AND BANKING (§ 80*) — BRANCH BANK—ASSETS ON INSOLVENCY — DISPOSITION.

Depositors of a branch bank are on the same footing as depositors in the parent bank, and are only entitled to their pro rata of the entire assets of the company on insolvency to be paid to them in due course of the administration of its estate by the receiver; the assets of the branch not constituting a trust fund in the hands of a receiver to be applied to the payment of the branch bank's depositors.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 184–196; Dec. Dig. § 80.*]

2. BANKS AND BANKING (§ 39*)—PURCHASE OF STOCK—RESCISSION.

Where stockholders of a branch bank were induced to purchase stock by false representations, they were entitled to have the contract rescinded and recover back the purchase price, and, if able to identify the money or property or trace the proceeds after it reached the hands of the bank, they might enforce an equitable lien thereon; their rights, however, being subject to the superior rights of innocent third parties who were purchasers without notice.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 44–48; Dec. Dig. § 39.*]

3. BANKS AND BANKING (§ 47*)—CAPITAL STOCK—TRUST FUNDS.

The capital stock of a bank is a trust fund for the benefit of its creditors.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 64–68; Dec. Dig. § 47.*]

4. BANKS AND BANKING (§ 80*)—INSOLVENCY — ADMINISTRATION ASSETS — DEFRAUDED STOCKHOLDERS.

Rights of stockholders of an insolvent bank who had been induced to purchase stock by false representations of the corporation or its agents are subordinated to the rights of depositors, who, without knowledge of such fraud, subsequently became creditors of the corporation.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 184–196; Dec. Dig. § 80.*]

5. CORPORATIONS (§ 80*) — SUBSCRIPTION TO STOCK—FRAUD.

A subscription to the stock of a corporation induced by fraud is voidable only when repudiated by the subscriber, and is not void.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 264; Dec. Dig. § 80.*]

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Action by James G. Burleson and others against T. H. Davis, as receiver of the Union Trust Company. Judgment for defendant, and plaintiffs appeal. Affirmed.

Houston, Boyle, Storey & Davis, for appellants. James H. Robertson and J. B. Robertson, for appellee.

## Findings of Fact.

JENKINS, J. By an act of the Legislature approved May 23, 1871, James Crutcher and his associates and successors were constituted a body corporate for the purpose of doing a general banking business, with the privilege, among other things, of establishing branch banks. The capital stock was authorized to be $200,000, with the privilege of increasing the same $100,000 for each branch bank established. Nothing appears to have been done under this charter until 1908, when a bank was organized under it at San Antonio, Tex., under the name of the Union Trust Company, with an alleged capital stock of $200,000. Said capital stock, in fact, consisted of $1,500 cash, the charter, valued at $26,000, and the balance in notes signed by C. L. Bass and L. C. Balch. After running 10 months by revaluing the charter at $55,000, it was made to appear that said bank had made a profit of $13,000, when, in fact, it had been run at a loss of over $10,000. At this time, July, 1909, J. G. Burleson, who had theretofore been engaged in the banking business at Lockhart, Tex., was undertaking to establish a state bank in said town. The agents of the Union Trust Company came to Lockhart at this time with the view of establishing a branch bank of said company at that place. There being no demand for two additional banks at Lockhart, Burleson and his friends agreed with the agents of the trust company to take stock in said company, and aid in establishing a branch bank of said company in Lockhart, for which purpose an additional $100,000 was to be added to the capital stock of said trust company, with the further agreement that on January 1, 1910, said branch bank was to be converted into a state bank. Burleson and the others, who are styled in plaintiffs' petition "stockholder plaintiffs," subscribed and paid in cash to said additional capital stock $20,737.81, and executed their notes for $9,168.04. Burleson and the other stockholder plaintiffs were induced to subscribe for this stock by the false and fraudulent representations of the agents of said trust company, to the effect that said trust company had a paid-up capital stock of $200,000, and had earned a surplus of $13,000 in the preceding 10 months. Subsequent to the organization of the Lockhart branch bank, said Union Trust Company organized other branch banks, and the capital stock of said Union Trust Company was increased to a total of $500,000. Said Union Trust Company had its principal bank at San Antonio, and at said bank and its branch banks continued to do a general banking business until January 10, 1910, when it was placed in the hands of a receiver, T. H. Davis, the appellee herein. At the time said receiver took charge of the assets of said Lockhart branch the same amounted to $59,549.63. The liabilities of said Lockhart branch bank at said time were $60,673.49, showing a loss in the operation of said branch bank of $823.86. The other plaintiffs herein, who are denominated in plaintiffs' petition "depositor plaintiffs," had deposited in said branch bank the amounts for which they sue. The plaintiffs brought this suit against said receiver, alleging said fraudulent representations, and asked that the assets of said Lockhart branch bank in the hands of said receiver be declared a trust fund, first, for the repayment of the depositor plaintiffs; and, second, for the repayment of the stockholder plaintiffs. Said receiver, in addition to general and special exceptions to plaintiffs' petition and general denial, reconvened and asked judgment against the stockholder plaintiffs for the balance due by them on their subscription to said stock.

Subsequent to the subscription to the stock of said Union Trust Company made by the stockholder plaintiffs, there was deposited in the various banks of said Union Trust Company $153,000. Such deposits were made without knowledge on the part of such depositors of the fraudulent representations made to the stockholder plaintiffs, or of any fact or circumstance from which they might have inferred that said stockholder plaintiffs had been induced to subscribe for stock upon fraudulent representations, or of any other fact which might entitle them to withdraw the capital stock subscribed by them. No part of said deposits have been repaid, but the same are now valid subsisting debts against said Union Trust Company. No representations were made to the depositor plaintiffs to induce them to deposit in said Lockhart branch bank. The Union Trust Company is shown to be hopelessly insolvent. Its assets are not sufficient to pay its creditors.

The court, trying this case without a jury, rendered judgment against all of the plaintiffs and in favor of the receiver against the stockholder plaintiffs for the balance due by them on their subscription to the capital stock of said Union Trust Company. The court filed 25 findings of fact, but the view which we take of this case renders it unnecessary for us to make findings of fact further than are above set out, except as the same may be indicated in the opinion herein.

## Opinion.

[1] 1. We think the judgment of the trial court as to the depositor plaintiffs should be sustained upon the facts hereinbefore set out. Nothing was shown which would have authorized the court to hold that the assets of the Lockhart branch bank were a trust fund in the hands of the receiver to be applied to the payment of the claims of the depositor plaintiffs. They stand upon the same footing as other depositors in said Union Trust Company, and are entitled only to their pro rata of the assets of said com-

pany to be paid to them in due course of the administration of the estate of said company by said receiver.

[2] 2. It is a well-recognized principle of law that, where a party has been induced to enter into a contract by false representations as to material matters, he will be entitled, upon the discovery of such fraud, and upon tendering back the thing received by him in such transaction, to have such contract rescinded, and to recover back the purchase price paid by him. If he can identify the money or property paid by him, he is entitled to recover the same in kind; if he cannot, if he can trace the proceeds of such payment and identify the same, he has an equitable lien upon such proceeds. The rights of the party defrauded, however, may be subjected to the superior rights of innocent third parties. Such rights are illustrated in the case of innocent purchasers; that is to say, purchasers for value, without notice.

[3] 3. It is also a well-recognized legal principle that the capital stock of a bank is a trust fund for the benefit of its creditors. Cook on Stocks, § 199; Sawyer v. Hoag, 17 Wall. 610, 21 L. Ed. 735; Morgan v. Struthers, 131 U. S. 246, 9 Sup. Ct. 726, 33 L. Ed. 135. Such being the law, under the facts of this case, which has the superior right, the stockholder plaintiffs or the depositors, who are represented herein by the receiver?

[4] 4. It is well established upon authority, and we think upon reason, that the rights of the stockholders who have been induced to purchase stock by the fraudulent representations of the corporation or its agents are subordinated to the rights of those who, without any knowledge of such fraud, have subsequently become creditors of the corporation. Mathis v. Pridham, 1 Tex. Civ. App. 58, 20 S. W. 1015; Scott v. Deweese, 181 U. S. 202, 21 Sup. Ct. 585, 45 L. Ed. 824; Washburn v. Green, 133 U. S. 40, 10 Sup. Ct. 280, 33 L. Ed. 516; Cook on Stockholders, §§ 154, 164; Morawetz on Private Corporations, § 839; 26 Ency. Law, p. 1011; 10 Cyc. p. 441. In Scott v. Deweese, supra, Scott was induced by false and fraudulent representations as to the solvency of a national bank to subscribe for 50 shares of the increased capital stock of said bank, for which he paid par value in cash. The receiver of said bank brought suit against Scott to recover of him an amount equal to the capital stock held by him, as provided in the national bank act. Scott pleaded the fraud by which he was induced to subscribe for said stock as a defense to said action, and tendered his stock for cancellation. Mr. Justice Harlan, delivering the opinion of the court, said: "If the subscriber became a stockholder in consequence of fraud practiced upon him by others, * * * he must look to them for such redress as the law authorizes, and is estopped, as against creditors,

141 S.W.—36

to deny that he is a shareholder within the meaning of [Rev. St.] section 5151 [U. S. Comp. St. 1901, p. 3465]." "When a person subscribes to the capital stock of a corporation, he must be held to contemplate and intend that the corporation shall incur debts and pledge its capital stock as security. Creditors who in good faith trust the corporation upon the faith of this security stand in the position of innocent purchasers for value." Morawetz on Private Corporations, supra.

Counsel for appellants recognize this general principle of law in the following language as set out in their brief: "We are not unmindful of the fact that the weight of American authorities, outside of the state of Texas, is against the proposition here made, that a stockholder may rescind his subscription procured through fraud and recover back the money paid, notwithstanding the insolvency of the corporation and the appointment of a receiver and subsequent creditors, if he has not been guilty of laches in discovering the fraud and commencing his action; but we believe the better reasoning sustains the Texas cases cited by us, as proving the proposition of law here made." We do not agree with appellants that the Texas cases cited by them announce a doctrine contrary to that hereinabove stated by us. The Texas cases referred to are Robinson v. Dickey, 14 Tex. Civ. App. 70, 36 S. W. 499, and Byers Bros. v. Maxwell, 73 S. W. 437. It does not appear that the rights of subsequent creditors were made an issue in either of these cases, nor that the court made any decision as to the rights of creditors of insolvent corporations as against stockholders who had been induced by fraudulent representations to purchase stock. There was no pleading upon which evidence as to subsequent creditors could have been offered in the case of Robinson v. Dickey; and no evidence as to such creditors was adduced in Byers v. Maxwell. This issue, however, was raised in the Texas case of Mathis v. Pridham, supra. In that case Williams, Chief Justice, speaking for the court, said: "There was no error in sustaining the exceptions to the answer. Admitting the facts, if timely set up, would have availed against the company, they could be of no avail against the creditors." The facts referred to were that the Ft. Worth stockholders were induced to subscribe to the capital stock of a meat packing corporation by fraudulent representations made by said corporation, and they pleaded these facts against the action of the receiver to recover of them the unpaid portion of their capital stock. Appellants say: "Where property is procured by one person from another through fraud, the legal title does not, in fact, pass, and the person defrauded should not be deprived of his property, unless by reason of his own act or neglect, subsequent to the discovery by him of the fraud, other persons are in-

duced to extend credit to the person or corporation defrauding him upon the faith of the apparent ownership by such person or corporation of the property so obtained by it through fraud." That the legal title does not pass under such circumstances is not a correct legal proposition.

[5] "A subscription (of stock) induced by fraud is voidable, but does not become void until it is repudiated by the subscriber." Cook on Stocks, § 151. This is true as to any other transaction involving the sale or exchange of property. In such case the subscriber to the capital stock of a corporation by his own act has induced the subsequent creditors of such corporation to believe that the capital stock subscribed by him has been or will be paid in, and will remain a trust fund, to which subsequent creditors may look for security. The stockholder plaintiffs herein subscribed to the stock of the Union Trust Company with the view of making a profit on their investment. By such act on their part they invited the depositors to deposit their money with said trust company, and thereby represented that their subscription to the capital stock was bona fide, and would remain in the vaults of said company to meet any demands that might be made by the depositors. They now by their acts say to the depositors: "True, we made such representations and pledges to you, but we now seek to repudiate the pledges so made by us because we were induced to do so by fraudulent misrepresentations made to us." By whom? Not by the subsequent creditors, and therefore the subsequent creditors should not be made to suffer by reason of such fraud. Where a party has trusted and been deceived, he ought to bear the loss occasioned by his own credulity, rather than that the same should be borne by another who was not a party to such transaction.

Believing that the trial court did not err in rendering judgment for the appellee, we affirm said judgment.

Affirmed.