BOHN et al. v. BURTON-LINGO CO.
(No. 419.)

(Court of Civil Appeals of Texas. El Paso. April 1, 1915.)

1. APPEAL AND ERROR ⊜⇒501—RECORD—EXCEPTIONS—NECESSITY OF SHOWING—INSTRUCTIONS.

Assignments of error, complaining of the giving of a peremptory instruction for plaintiff and the refusal of instructions requested by defendants, will be overruled, where it does not affirmatively appear that exception has been taken, as required by Acts 33d Leg. c. 59.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2300–2305; Dec. Dig. ⊜⇒ 501.]

2. CORPORATIONS ⊜⇒269 — UNPAID STOCK SUBSCRIPTIONS—ACTION BY CREDITOR—EVIDENCE.

In an action by a judgment creditor of a corporation to recover unpaid stock subscriptions, evidence was admissible to show that defendants were induced to subscribe for the stock by fraudulent representations that certain persons in whom they had confidence had subscribed for stock, and that on discovering the fraud they had repudiated their subscriptions, with the con-

sent of the corporation, prior to the time credit was extended to it by plaintiff.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 887, 888, 980, 1149–1159, 2277; Dec. Dig. ☞269.]

3. CORPORATIONS ☞80 — STOCK SUBSCRIPTIONS—RESCISSION FOR FRAUD—PROCEDURE.

Stock subscriptions procured by fraudulent representations may be rescinded by the subscriber by notifying the corporate authorities, without taking legal proceedings.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 244, 246–264, 1407, 1407½; Dec. Dig. ☞80.]

4. CORPORATIONS ☞80—SUBSCRIPTION CONTRACTS — GROUNDS FOR RESCISSION — FALSE REPRESENTATIONS.

A promotor's false representations that certain persons in whom the subscribers had confidence had subscribed for corporate stock, when relied on by the subscribers, constituted such fraud as authorized them to rescind their subscription contracts.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 244, 246–264, 1407, 1407½; Dec. Dig. ☞80.]

5. CORPORATIONS ☞243 — STOCK SUBSCRIPTIONS—REPUDIATION—LIABILITY TO CREDITORS.

A person induced by fraud to become a subscriber to the capital stock of a corporation is relieved from liability to the corporation's creditors, where he repudiates his subscription promptly and before the rights of the creditors intervene.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 943, 944, 946–950, 952–959, 974, 975, 979; Dec. Dig. ☞243.]

6. CORPORATIONS ☞83 — STOCK SUBSCRIPTION—CANCELLATION FOR FRAUD—CONSENT.

The rule that a stock subscription contract cannot be canceled except with the consent of all stockholders does not apply to a contract procured by fraudulent representations of the promotor of the corporation; the right to cancel in such case not being dependent on consent.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 328–336; Dec. Dig. ☞83.]

7. ALTERATION OF INSTRUMENTS ☞18—STOCK SUBSCRIPTION—RELEASE OF SUBSCRIBERS.

The alteration of the terms of a stock subscription contract, without consent of the subscribers, by changing the number of shares and the amount of capital stock subscribed for, being an alteration importing fraud or improper design, releases the subscribers from liability under the contract.

[Ed. Note.—For other cases, see Alteration of Instruments, Cent. Dig. §§ 140–145; Dec. Dig. ☞18.]

8. ALTERATION OF INSTRUMENTS ☞23 — RECOVERY OF ORIGINAL INSTRUMENT—FRAUDULENT INTENT.

The rule that where the instrument has been altered recovery may be had on the original instrument applies only where the alteration has been without fraudulent intent.

[Ed. Note.—For other cases, see Alteration of Instruments, Cent. Dig. §§ 192–207; Dec. Dig. ☞23.]

9. CORPORATIONS ☞84—STOCK SUBSCRIPTION—RELEASE OF SUBSCRIBERS — DEPARTURE FROM CONTRACT.

The incorporation of a company with a capital stock of $10,000, instead of $15,000, as represented to subscribers, releases subscribers who have not consented thereto, acquiesced therein, or otherwise lost their right to object to such departure from the terms of the subscription contract.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 296–327; Dec. Dig. ☞84.]

10. CORPORATIONS ☞269 — STOCK SUBSCRIPTIONS—RELEASE OF SUBSCRIBERS — CHANGE OF CORPORATE NAME—BURDEN OF PROOF.

Where, in a creditor's action to recover on stock subscriptions, defendants claimed to have been released because the company was incorporated as the "Co-operative Furniture & Coffin Manufacturing Company," instead of as "The Co-operative Furniture Manufacturing Company," as stated in the subscription contract, the burden was on defendants to prove that such change in the corporate name was a material alteration.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 887, 888, 980, 1149–1159, 2277; Dec. Dig. ☞269.]

Appeal from District Court, El Paso County; Dan M. Jackson, Judge.

Action by the Burton-Lingo Company against Philip Bohn and others. From judgment for plaintiff, defendants appeal. Reversed and remanded.

Goldstein & Miller and Jones, Jones & Hardie, all of El Paso, for appellants. J. F. Woodson, of El Paso, for appellee.

HIGGINS, J. Burton-Lingo Company recovered a judgment in the sum of $620.15 against the Co-operative Furniture & Coffin Manufacturing Company, a corporation. Execution thereon was issued and returned "nulla bona." The plaintiff in judgment thereupon filed a motion, setting up the facts indicated and averring, further: That B. F. Young, Philip Bohn, and O. A. Landa had subscribed to the capital stock of defendant in judgment as follows: Young, $1,000, and had only paid $100 upon the amount of his subscription; Bohn, $600, and had paid $150; Landa, $400, and had paid $100. That Young owed a balance of $900 upon his subscription, Bohn a balance of $450, and Landa, $300. An order was asked directing execution to issue against said stockholders to an extent equal to the amount of the stock unpaid by them, not exceeding the amount of the judgment, as provided by article 1198, R. S. A hearing was had before a jury, and peremptory instruction given, in accordance wherewith verdict was returned and judgment rendered in appellee's favor, finding that Young had subscribed for 9 shares which had not been paid for, Bohn 5 shares, and Landa 1½ shares, and directing that executions be issued against Young to extent of $900, against Bohn to extent of $500, and Landa for $150, so as to satisfy the amount of appellee's judgment and no more. The parties last mentioned appeal from this order.

[1] Various assignments complain of the peremptory instruction in favor of appellee and of the refusal of instructions requested by appellants. They are overruled for the reason that no exception appears to have been taken, as required by chapter 59, Acts

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

33d Leg. In order to avail one of the right to complain of errors relating to such matters, the record must affirmatively show that the provisions of the act mentioned have been observed. And it has been held by this and other courts that the act is applicable to peremptory instructions given or refused. Needham v. Cooney, 173 S. W. 979, by this court, and Railway Co. v. Wheat, 173 S. W. 974, by Ft. Worth court, both recently decided and not yet officially reported; Railway Co. v. Feldman, 170 S. W. 133; Case v. Folsom, 170 S. W. 1066.

The Co-operative Furniture & Coffin Manufacturing Company was chartered November 21, 1912. The items of the company's indebtedness to appellee accrued upon various dates, beginning December 3, 1912, and ending June 2, 1913.

[2] Upon trial, Young offered to testify, in substance, that he was induced to subscribe for the shares of stock in the Co-operative Furniture & Coffin Manufacturing Company by representations made to him by one D. C. Huntington to the effect that J. A. Mahoney and W. S. Cox had subscribed for, or agreed to subscribe for, $500, or $1,000 each of the stock in said proposed corporation; that he was acquainted with said Mahoney and Cox, and knew them to be successful merchants of large means, and, ignorant of the falsity of said representations and believing same to be true, and relying thereon, and induced thereby, he agreed to subscribe for $1,000 of the capital stock of said company; that very shortly after said company was incorporated he discovered that said representations were false, and that said Mahoney and Cox had never subscribed for, or agreed to subscribe for, any of the stock of said corporation, and immediately upon learning said fact, he repudiated his agreement to take said shares of stock in said company and refused and declined to be bound by his subscription agreement, and having theretofore paid $100 on said subscription agreement, the Co-operative Furniture & Coffin Manufacturing Company recognized his right to repudiate said subscription agreement, consented thereto, and issued to him one share of stock in said company to cover the $100 previously paid by him on his said subscription, which was a complete settlement between him and said corporation as to his subscription agreement; that his repudiation of his liability on his subscription agreement was made prior to the time appellee extended credit to the corporation, and at the time such credit was extended, the repudiation had been made and by the company accepted and certificate issued for the one share, covering the $100 which he had paid. Bohn and Landa offered to testify to the same effect with reference to rescission of their subscriptions. All of this testimony upon objection was excluded, and the action of the court in this respect is assigned as error.

[3] The principle of law that fraud vitiates a contract applies to subscription contracts, and they are voidable at the option of the defrauded person. Subscriptions induced by fraudulent representations may be avoided by the subscriber, and there are a number of different remedies open to him, one being that, upon discovery of the fraud, he may rescind the subscription by notification to the corporate authorities without taking legal proceedings. 1 Cook on Corporations (6th Ed.) §§ 151, 152; 1 Thompson on Corporations (2d Ed.) §§ 706, 734, 739.

[4, 5] The false representations made by the promoter, Huntington, relative to subscriptions to the capital stock of the proposed corporation by Mahoney and Cox, relied upon by the parties, was a fraud upon them, and furnished sufficient justification for rescission of the subscription contracts. Ins. Co. v. Milligan, 154 Ky. 216, 157 S. W. 37; Coles v. Kennedy, 81 Iowa, 360, 46 N. W. 1088, 25 Am. St. Rep. 503; Johns v. Coffee, 74 Wash. 189, 133 Pac. 4. And the rescission having been promptly made and prior to the extension of credit by appellee, it must be held that the parties were relieved of any liability for payment of appellee's claim. 10 Cyc. 423, 439–443; 1 Thompson on Corporations (2d Ed.) §§ 734, 739. In other words, the rule may be safely stated that one induced by fraud to become a subscriber to the capital stock of a corporation is relieved of liability to the creditors of the latter if he repudiates his subscription promptly and before the rights of creditors have intervened. 10 Cyc. 423, 439–443; 1 Thompson on Corporations (2d Ed.) §§ 734, 739; 1 Cook on Corporations (6th Ed.) §§ 151, 152, 167, 168, 171.

Under the rule indicated, the testimony would have presented a defense, and the court erred in excluding same.

Appellee urges that the rights of stockholders who have been induced to purchase stock by the fraudulent representations of the corporation, or its agents, are subordinate to the rights of those who, without any knowledge of such fraud, have subsequently become creditors of the corporation. Burleson v. Davis, 141 S. W. 559, and cases cited. This well-settled principle of law applies when rescission is attempted after the rights of creditors have intervened, but is in no wise applicable to a case where rescission, based on fraud or other sufficient ground, is made and consummated prior to intervention of the rights of creditors.

[6] Neither is there any merit in the contention that appellants' subscription obligations could not be terminated except by unanimous consent of all the stockholders. There is a broad distinction between the rescission of a subscription contract induced by fraud and cancellation by mutual consent of the parties. In the former case the right is an absolute one, in no wise dependent upon the consent of any one. In the latter instance, it is true, at least so far as the stockholders

are concerned, that the subscription contract cannot be canceled except by their unanimous consent. 1 Cook on Corporations (6th Ed.) §§ 167, 168, 169. The rights of the parties in the two cases obviously rest upon very different grounds. A discussion of the distinction would be a matter of supererogation.

In view of another trial and necessary recurrence of the questions arising upon the court's action in peremptorily instructing in favor of appellee, it is advisable that we indicate our views upon the propriety of such action under the facts disclosed by the record.

[7] It appears that the parties agreed in writing to take certain shares of the capital stock of a proposed corporation to be named "The Co-operative Furniture Manufacturing Company," the capital stock of which was to be $15,000, divided into 150 shares, each of the par value of $100. Young subscribed for 10 shares of the value of $1,000, Bohn for 7½ shares of the value of $750, Landa for 2½ shares of the value of $250. Without the consent of the parties, the terms of the subscription contract were altered in the following particulars: Bohn's subscription was changed to six shares of the value of $600, Landa's to five shares of the value of $500, the name to "Co-operative Furniture & Coffin Mfg. Company." The articles of incorporation, as finally drawn and filed, provided for a capital stock of $10,000, and its corporate name was stated to be "Co-operative Furniture & Coffin Manufacturing Company." A willful and material alteration of a written instrument made by one of the parties to it, after execution, and without the authority or consent of the other, avoids the instrument and defeats any rights the guilty party would otherwise have under it. Baldwin v. Haskell Bank, 104 Tex. 122, 133 S. W. 864, 134 S. W. 1178; Matson v. Jarvis, 133 S. W. 941; Kalteyer v. Mitchell, 110 S. W. 466; Texas, etc., v. Smith, 14 S. W. 1074; 1 Am. & Eng. Ency. Law (1st Ed.) 502; 2 Cyc. 177–182. The foundation of the doctrine is the ground of public policy that no man will be permitted to take the chance of committing a fraud without running any risk of loss by the event when it is detected. 2 Cyc. 179. An alteration of the nature indicated imports fraud or improper design, being a conclusion of law deduced from the fact that the change is willfully made. 2 Cyc. 146. Applying these rules, it follows that the alterations with respect to the number of shares and amount of capital stock which Bohn and Landa subscribed for operated to release them from their subscription agreement.

[8] But it is urged that such alteration will not defeat a recovery upon the theory that it is an admitted fact that there was a subscription made, and to that extent a recovery should be allowed as upon an original oral agreement, disregarding the written contract. In support of this contention, we are referred to Otto v. Halff, 89 Tex. 384, 34 S. W. 910, 59 Am. St. Rep. 56. In that case, notes were given to cover antecedent indebtedness. An alteration with respect to interest was made without fraudulent design, and intending to make it conform to the true agreement. The court held that the alterations avoided the notes, but that recovery might be had based upon the original agreement to pay. To the same effect are Baldwin v. Bank, supra, Casey-Swasey Co. v. Anderson, 37 Tex. Cr. App. 223, 83 S. W. 840. These cases rest upon the rule, followed by the courts of a number of states, that when a written instrument has been altered without any fraudulent intent, the payee may recover upon the original consideration. 1 Am. & Eng. Ency. Law (1st Ed.) 520, 2 Cyc. 183. We doubt whether it should, or has ever been applied, to instruments other than those given to evidence a then existing valid obligation or indebtedness, arising entirely independent of the altered instrument. but if it be conceded that it would apply to a contract such as is here considered, and that the obligation to subscribe arose independent of the written instrument, still this case does not fall within its scope, because it is not shown that the alteration was made without fraudulent design. The rule invoked by appellee is, in all instances, confined to cases in which the alteration is made without fraud in fact. 2 Cyc. 185. This is plainly indicated by the Texas cases. And the burden rested upon appellee of showing that the alteration was made under circumstances which did not bar recovery. Matson v. Jervis, supra.

[9] The incorporation of the company with a capital stock of $10,000, instead of $15,000 was also a departure from the terms of the subscription contract in a material respect, and would operate to release the subscribers, unless they consented thereto, acquiesced therein, or otherwise lost their right to question the effect of such departure.

[10] As to the change in the corporate name, it does not occur to us that this was a material alteration. If facts existed which make it material, it would be incumbent upon appellants to plead and prove same.

Reversed and remanded.